UNITED STATES v. C. M. LANE LIFE-BOAT CO., Inc., et al. (KROLMAN, Intervener).

No. 21.

Circuit Court of Appeals, Second Circuit.

April 7, 1941.

Odin Gustafson, of New York City, for C. M. Lane Lifeboat Co., Inc., defendant-appellant.

Tibbetts, Lewis, Lazo & Welch, of New York City (Murray D. Welch and George A. Dickinson, both of New York City, of counsel), for Hartford Accident & Indemnity Co., defendant-appellant.

Deane Ramey, of New York City, for Walter J. Krolman, intervenor-appellant.

Harold M. Kennedy, U. S. Atty., of Brooklyn, N. Y. (Vine H. Smith, of Brooklyn, N. Y., and Mario Pittoni, of Lynbrook, N. Y., Asst. U. S. Attys., of counsel), for the United States, plaintiff-appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

In July, 1929, the government issued invitations for bids upon a contract to furnish seventeen lifeboats for the steamer U. S. Grant. Each boat was to be of a recognized standard design described in the contract as "Lundin type or an absolute equal". The invitations required the bidders to submit drawings, plans or blueprints of the lifeboats they were furnishing. Article 15 of the proposed contract provided: "The Contractor shall hold and save the Government, its officers, agents, servants, and employees, harmless from liability of any nature or kind for or on account of the use of any copyrighted or uncopyrighted composition, secret process, patented or unpatented invention, article or application furnished or used in the performance of this contract, excepting patented articles required by the Government, in its specifications, the use of which the contractor does not control."

The intervenor, Krolman, submitted a bid on behalf of the defendant, C. M. Lane Lifeboat Company, Inc., accompanied by blueprints bearing the description "Lane Decked Metallic Lifeboat" which he said were slightly changed from the Lundin lifeboat in that they had flat balsa wood sides with edges instead of being rounded as in the Lundin type. In making this variation his purpose was to avoid infringement of the Lundin patent owned by the Welin Company. The only other bidder was the latter company, but the bid of Lane Company was lower  The contract was awarded to it and was executed on July 20, 1929. The cost of the lifeboats was to be $37,400. A performance bond was to be furnished by the defendant, Hartford Accident and Indemnity Company, which was delivered on July 31, 1929. The intervenor Krolman agreed to indemnify the Hartford Company for writing the bond.

Under the government specifications no patented articles were required unless it be held that the entire lifeboat contracted for was a patented article required as such within the meaning of Article 15.

In May, 1930, the government issued invitations for bids to furnish four more lifeboats. The government specifications

accompanying this invitation, as in the case of the first contract, had no accompanying plans, drawings or blueprints. They contained no requirement that the lifeboats have rounded ends, flat bottoms or balsa wood sides, but only that they should be "standard transport type metal lifeboats". A bid by the Lane Company was accepted. The bid was accompanied by blueprints that disclosed a structure like the Lundin lifeboat. This contract was awarded to the Lane Company on June 7, 1930, at $8,680 and a performance bond for $15,000 was furnished by the Hartford Company. The contract contained the following provision to save the government harmless from liability for patent infringement: "Article 20. Patents.— The contractor shall hold and save the Government, its officers, agents, servants and employees harmless from liability of any nature or kind for or on account of the use of any patented or unpatented invention, article or appliance furnished or used in the performance of this contract, excepting patented articles required by the Government in its specifications, the use of which the contractor does not control."

Jensen, an army quartermaster, and Captain Fitzgerald of the United States Army were assured by the Lane Company's representative that it had a right to manufacture the lifeboats though a decree had been granted by Judge Campbell on May 8, 1930, in the Eastern District of New York, holding that the Lane Company had infringed the Lundin patent owned by the Welin Company in making lifeboats embodying the Lundin invention. The Lane Company was appealing from the decree.

In June, 1930, bids similar to those for the second contract were asked for in connection with two more contracts for four lifeboats each. Bids were made by the Lane Company and contracts awarded to it as the lowest bidder, one for $6,425, and the other for $13,867. Each bid by that company was accompanied by a blueprint of the lifeboats to be furnished, and performance bonds were given by the Hartford Company for $3,300 and $7,000 respectively. Each contract ·contained a clause exactly like Article 20 of the second contract safeguarding the government against patent infringement.

Because of the purchase of twenty-nine lifeboats under the above four contracts the Welin Company sued the government in the Court of Claims for infringement of the Lundin patent and recovered a money judgment in the amount of $9,-889.36 which was afterwards paid. The United States then brought this action against the Lane Company and its bondsman, Hartford Accident and Indemnity Company, to recover under Article 15 of the first contract, and Article 20 of the second, third and fourth contracts to save the government harmless from liability for the infringement, and obtained judgment in its favor in the court below.

■ There can be no doubt that the government officials knew that the lifeboats for which the bids were offered were of the Lundin general type and that the regular Lundin boat was patented. They did not know that the boats to be built were covered by the Lundin patent, and they were assured not only that boats could be built which would avoid the patent, but that the decision rendered in the Eastern District prior to the making of the second, third and fourth contracts was to be appealed and would not stand. The government had not in terms ordered a patented boat and, in our opinion, was not in the position of taking the chance as to ultimate liability if the boats to be furnished should infringe. We think the words "patented articles required * * * in its specifications" meant patented articles described as such and not articles (in this case boats) which might perhaps, or even might be likely to infringe.

■ While we agree with the result reached by the court below, we do not accede to its view that the meaning of the word "article" in the covenant to hold harmless did not cover the boat itself, but only parts of its equipment which might be patented. One reason for this is that there seem to have been no such patented accessories, but the principal one is that such a construction of the clause seems very unreal and forced. In our opinion the words "excepting patented articles required by the Government in its specifications the use of which the contractor does not control" relate to articles stated to be covered by a patent and ordered by the United States. In other words, under the article the United States was to have the benefit of the saving clause unless it deliberately ordered a patented article and not merely an article which might turn out to be such. None of the specifications called for a patented lifeboat. The bids were accompanied by blueprints and draw-

ings of a lifeboat which finally proved to infringe claims of the patent (as perhaps might have been foreseen), nevertheless a patented article was not in terms ordered and assurances were given that the boats to be delivered would not infringe. The dealings between the parties, both oral and written, served to clarify the use of somewhat ambiguous words. Unless the contracts called for a patented article in terms we think that the saving clauses were operative. Accordingly the defendants Lane Company and the Hartford Company which furnished the bonds of indemnity were properly held liable.

Judgment affirmed.