**MACK et al. (FRANK, Intervenor) v. PASSAIC NAT. BANK & TRUST CO. et al.**

**No. 8855.**

Circuit Court of Appeals, Third Circuit.

Argued April 19, 1945.

Decided July 6, 1945.

Ernest Kurzrok, in pro. per.

Samuel Kaufman, Bilder, Bilder & Kaufman, all of Newark, N. J. (J. Leo Rothschild, of Newark, N. J., on the brief), for appellee Adam Frank.

Ralph A. Corbin, of Passaic, N. J., for appellee Passaic Nat. Bank.

Isadore Glauberman, of Jersey City, N. J., for appellees Ruth Mack and Lucy Elias.

Before BIGGS, GOODRICH, and McLAUGHLIN, Circuit Judges.

BIGGS, Circuit Judge.

The plaintiffs, Mack and Elias, executrices of the estate of Clara B. Prince, brought suit as holders of "Certificate[s] of shares of proceeds of sale of the East and West Ridgelawn Cemeteries, bodies corporate of the State of New Jersey", against Passaic National Bank & Trust Company hereinafter called the Trust Company, successor trustee to the Passaic Trust & Safe Deposit Company, hereinafter called the Deposit Company, alleging a breach of the provisions of a trust indenture by the successor trustee. The trust indenture, executed on December 21, 1906, recites, among other things, that one Gruber conveyed to the Deposit Company certain lands in Passaic County, New Jersey, and that the Deposit Company conveyed

these lands to *East*[1] Ridgelawn Cemetery subject to certain trusts in pertinent part as follows: East Ridgelawn Cemetery was to pay to the Deposit Company as trustee not less than 6¢ for each square foot of land sold by the Cemetery Company for burial purposes, the Deposit Company being required to use these moneys for the perpetual care of the cemetery. The rest of the money received from the sale of lots, less certain specified expenses, was also to be paid to the Deposit Company which on certain dates was required to divide it among certificate holders of which Mrs. Prince was one.

The form of the certificate issued was set out in the indenture and was indeed anomalous. The certificate was as follows: "Certificate of shares of proceeds of sale of the *East* and *West* Ridgelawn Cemeteries, bodies corporate of the State of New Jersey. This is to certify that * * * is the registered holder of * * * shares of the proceeds of the sale of *these companies* of sub-lots or plots in the hands of said *corporations* after deducting certain expenses, charges and disbursements provided for in the deed by which the said lands were conveyed to the said *corporations* by the * * * Deposit Company. * * * This certificate is part of an issue of shares amounting in the whole to thirteen thousand five hundred. * * * The holder of this certificate is entitled to receive his pro rata share of such proceeds of sale from time to time as provided in said agreement above mentioned. Witness the seals of the *companies* and the *signatures* of their *Presidents* and *Treasurers* this —— day of ——, 19—." There follows the words "East Ridgelawn Cemetery —— President —— Treasurer." and "*West* Ridgelawn Cemetery —— President —— Treasurer." It should be stated that except within the form of the certificate just quoted, *West* Ridgelawn Cemetery is not referred to in the indenture. The parties state that a trust indenture in similar terms, mutatis mutandis, was executed on June 3, 1907, by the Deposit Company in respect to the sale of lots of West Ridgelawn Cemetery. Mrs. Mack and Mrs. Elias as executrices own certificates in the form stated.

The complaint filed by the executrices alleges that the Trust Company is the successor to the Deposit Company, that the Trust Company is in breach of its fiduciary duty in that it failed to collect a certain money decree procured by it in the New Jersey Court of Chancery on July 18, 1933 against *East* Ridgelawn Cemetery in the sum of $205,973 and that the Trust Company has permitted *East* Ridgelawn Cemetery "to disburse its funds to other creditors for salaries and other expenses * * *", that "Although requested by other shareholders [certificate holders] to * * * sequester the income of the * * * *East* Ridgelawn Cemetery for the purpose of applying a portion thereof to the payment" of the decree of the Court of Chancery of New Jersey, the Trust Company failed to do so and that by reason of this failure the income and funds of *East* Ridgelawn Cemetery was dissipated. The complaint refers to the trust indenture of 1906 and to conveyances made to "*East* and *West* Ridgelawn Cemeteries" and asserts that though the Deposit Company was given a lien upon the cemetery properties "upon default in payment of the shares of proceeds of sale of lots by the said cemeteries" the lien has been lost by the failure of the Trust Company to exercise it. The complaint also alleges that the Trust Company was a negligent trustee because it invested a large part of the "permanent care fund", the fund for the perpetual care of graves, in securities illegal for trust investments under the laws of New Jersey whereby the moneys were dissipated.

The complainant prays that the Trust Company be compelled to account for the losses suffered by the plaintiffs' estate and by "all other shareholders of the *East* and *West* Ridgelawn Cemeteries"; that the Trust Company be relieved of its trust and that a decree be entered removing it as trustee; that the Trust Company be required to pay to the new trustee such sums as may be determined to be due and owing from it by reason of the trustee's negligence, misfeasance and nonfeasance; and for such other and further relief as the court may deem to be just and proper.

The Trust Company appeared and filed an answer and counterclaim.[2] The learned District Judge referred the case to a special master. It appears from evidence offered to the master that neither the Deposit Company nor the Trust Company collected or received funds from *West* Ridgelawn Cemetery but did collect and receive funds

---

[1] Emphasis added throughout this opinion.

[2] Neither the answer nor the counterclaim is part of the record before us.

from *East* Ridgelawn Cemetery. It does not appear how the Deposit Company and its successor the Trust Company could collect funds from the sale of lots in *East* Ridgelawn Cemetery for the benefit of certificate holders and not collect funds for the benefit of certificate holders from the sale of lots in *West* Ridgelawn Cemetery without standing in breach of trust. The memorandum opinion[3] of Vice Chancellor Backes and the decree entered in the New Jersey Chancery suit cited do not compel a contrary conclusion. From the decree and the opinion it appears that on January 1, 1933, there was due from *East* Ridgelawn Cemetery to the perpetual care fund of that cemetery the sum of $3,418, and that there was due from *East* Ridgelawn Cemetery to the fund for the benefit of the certificate holders the sum of $205,973. The learned Vice Chancellor did not determine whether or not there was any sum due from *West* Ridgelawn Cemetery to the trustee. *West* Ridgelawn Cemetery was not a defendant in the case before him.

In the proceeding in the court below the Trust Company filed an account "as to the dividend and perpetual care funds". The special master received evidence in respect to the trustee's account, heard argument and on May 22, 1944, filed a report recommending the approval and allowance of the account of the Trust Company "as Trustee under the Declaration of Trust". On this report the court below entered a decree which contained a number of recitals. The first states that Gruber conveyed certain lands in the "City of Clifton, County of Passaic and State of New Jersey, to the ———— Deposit Company set forth in *two Declarations* of Trust made by the ———— Deposit Company dated *December 21, 1906* [dealing with lands of *East* Ridgelawn Cemetery] and *June 3, 1907* [dealing with lands of *West* Ridgelawn Cemetery] respectively ————; that in accordance with the said *Declarations* of Trust the ———— Deposit Company took title to the said lands and premises, which it thereafter conveyed to *two* Cemetery *Associations* known as *East* Ridgelawn Cemetery and *West* Ridgelawn Cemetery. ————"

The decree confirmed the special master's report as filed and approved and allowed the account of the Trust Company "as Trustee under the Declaration of Trust", authorized the resignation and withdrawal of the Trust Company "as Trustee under said *Declarations* of Trust", appointed substitute trustees in place of the Trust Company, vested them "with all powers, privileges and duties of the Trustee appointed under the terms and conditions of the *Declarations* of Trust * * * with full power and authority to liquidate the assets of the *Trust* Estate to the end that the proceeds may hereafter be distributed to those entitled thereto * * *". The decree also authorized the trustees to collect all moneys due under the decree of July 18, 1933, of the New Jersey Chancery Court and enjoined all persons from interfering with the possession or the management of the successor trustees and restrained all persons from bringing any suit against "the said *Trust Estate*" without first obtaining leave of the court. The decree also reserved jurisdiction to fix the reasonable value of the services of the Trust Company and the Deposit Company "as Trustees under the *Declarations* of Trust". The closing paragraph of the decree required "all known shareholders [to appear and] show cause * * *" on June 12, 1944 "why a decree should not be entered relieving the * * * Trust Company from any responsibility in connection with said *Trust*. * * *" It will be observed that parts of the decree referred to and purported to relieve the Trust Company as trustee under both trusts while other parts of the decree are directed only to the asserted negligence of the Trust Company in not collecting from *East* Ridgelawn Cemetery that portion of the money decree entered by the New Jersey Chancery Court for the benefit of certificate holders.

In view of the form established for the certificates by both indentures there may be one, and only one, fund established or to be established for the benefit of certificate holders. Such moneys, if any, as may be collected from the Trust Company may be subject to a prior charge in favor of the perpetual care funds of both cemeteries or of either cemetery. The decree of May 29, 1944, purports to deal with any right which any person may seek to assert against the Trust Company; for example, it enjoins "all persons" from interfering with the possession or the management of the successor trustees, and as we have pointed out treats on occasion with both declarations of trust, that of December 21, 1906 as well as that of June 3, 1907. If the certificate holders are entitled to share in a single fund and

---

[3] No opinion for publication.

that fund be subject to paramount equitable liens which may be asserted on behalf of the lot holders of both cemeteries or of either cemetery, the decree of May 29, 1944, and a decree entered in the form suggested by the rule to show cause may affect the rights of the lot holders of both cemeteries or of either cemetery.[4]

We must next proceed to appraise the position of the appellant Kurzrok against this background. Kurzrok, a lot owner in *West* Ridgelawn Cemetery, but not a certificate holder, appeared *pro se* in the District Court on June 12, 1944, the return day of the rule to show cause designated in the decree of May 29, 1944, and sought to intervene in the proceedings on the ground that any rights which he and other lot owners in *West* Ridgelawn Cemetery might have against the Trust Company for breach of trust in respect to the perpetual care fund required to be set up for *West* Ridgelawn Cemetery, were prejudiced by the decree of May 29, 1944, and might be affected by any subsequent decree framed as the rule to show cause would suggest. His application to intervene was denied and he appealed to this court.

Counsel for the plaintiffs and for another intervening certificate holder assert, and it is not denied by the appellant, that *West* Ridgelawn Cemetery is now in receivership in the New Jersey Court of Chancery and that that Court has taken possession of all of the property and assets of the corporation and is presently engaged in administering its affairs. Counsel for the certificate holders concede, however, that the decree of May 29, 1944, unless modified, may affect Kurzrok's rights and they, as well as Kurzrok, have submitted to us suggested forms of decrees to be entered by this court in order that Kurzrok's rights may be protected in the court below. In our opinion none of the suggested decrees meets the questions here presented. We think it is clear that Kurzrok's rights are affected by the decree of May 29, 1944, in its present form and that he was and is entitled to intervention of right pursuant to Rule 24(a)(2) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, for the lot owners of *West* Ridgelawn Cemetery are not and cannot be represented adequately by the certificate holders. Kurzrok's right to appeal therefore is absolute and will lie from the order of the court below refusing him intervention. See Moore's Federal Practice, vol. 2, § 24.06, p. 2332, and the authorities cited in note 9. Cf. the circumstances and the ruling in Kennedy v. Bethlehem Steel Company, 3 Cir., 102 F.2d 141. Cf. also old Equity Rule 37, 28 U.S.C.A. § 723 Appendix. Counsel for the certificate holders assert that the decree of May 29, 1944, may be so modified that Kurzrok's rights will not be affected thereby. If this be so, it is a matter for the District Court to be dealt with by that tribunal as the facts and the law require.

The order appealed from is reversed and the cause is remanded for such action by the court below as may be appropriate.

---

[4] We reach this conclusion despite the statements of counsel, which we accept fully, that the court below by an amendatory order struck out of the decree of May 29, 1944, the two paragraphs, hereinbefore referred to, confirming the report of the special master in all respects and approving and allowing the account of the Trust Company as trustee.