**PARK & TILFORD, Inc. v. SCHULTE et al.**

No. 57, Docket No. 20317.

Circuit Court of Appeals, Second Circuit.

Jan. 8, 1947.

Rehearing Denied March 26, 1947.

SWAN, Circuit Judge, dissenting.

986

Edwin A. Falk, of New York City (Gale, Bernays, Falk & Eisner, Murray C. Bernays, Edgar A. Samuel, and Norton I. Katz, all of New York City, on the briefs), for Arthur D. Schulte et al., defendant-appellants.

Max L. Rothenberg, of New York City (Hirson, Bertini & Rothenberg, and Max M. Hirson, all of New York City, on the brief), for Park & Tilford, Inc., plaintiff-appellee.

John B. Creegan, Asst. U. S. Atty., of New York City (John F. X. McGohey, U. S. Atty., of New York City, on the brief), for the United States, intervenor-appellee.

Nathan B. Kogan, of New York City, for Marjorie D. Kogan, intervenor-appellee-appellant.

Roger S. Foster, Sol., Robert S. Rubin, Asst. Sol., and W. Victor Rodin, Atty., all of Philadelphia, Pa., for Securities and Exchange Commission as amicus curiae.

Before SWAN, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

In Smolowe v. Delendo Corporation, 2 Cir., 136 F.2d 231, 148 A.L.R. 300, certiorari denied Delendo Corp. v. Smolowe, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446, we upheld and applied § 16(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78p(b), making any profit from a "short-swing" speculation in corporate stock by an "insider" inure to the benefit of the corporation. The statute reaches any profit realized by, among others, a beneficial owner of more than 10 per cent of any class of any equity security "from any purchase and sale, or any sale and purchase, of any equity security" of the corporation within any period of less than six months, unless acquired in good faith in connection with a previous debt. It authorizes suit therefor by the corporation or by a stockholder if the corporation fails to sue within 60 days after request or fails "diligently to prosecute the same thereafter." This case now presents the further issue whether an initial purchase is shown by exercise of an option, within the six months' period, to convert preferred into common stock, the Act defining "purchase" to "include any contract to buy, purchase, or otherwise acquire." § 3(a) (13), 15 U.S.C.A. § 78c (a) (13).

The plaintiff is a corporation whose common stock is registered on a national securities exchange. The defendants are three brothers, trustees for a trust created by their father, David A. Schulte, a former president of plaintiff, and in 1945, chairman of plaintiff's board of directors. One of the defendants is likewise a member of plaintiff's board of directors. Through ownership of a majority of the common, voting stock, defendants in 1943 controlled the plaintiff. Defendants also owned 6,604 shares of plaintiff's preferred stock, which was redeemable by the plaintiff at $55 per share on 90 days' notice. This stock was also convertible by the shareholder into common stock in the ratio of $1\frac{1}{4}$ shares of common for each share of preferred stock. If plaintiff gave notice of redemption, the shareholder could nevertheless exercise the conversion privilege until the redemption date. From late 1943 until May, 1944, there was a spectacular rise in the market price of plaintiff's common stock, probably because of the rumor of an impending dividend to be paid in liquor. On December 20, 1943, plaintiff served notice of redemption

of its preferred stock, and on January 19, 1944, defendants exercised their privilege and converted their preferred into common stock. On that date the market price of the preferred was about 55¼ and the value of the block which defendants converted, as found by the court, was $364,871. On that date, also, the stipulated market price of the common was 58¼ and the market value of the entire block of common acquired by defendants was $480,853.78. Within six months defendants sold the common for $782,999.59.

Plaintiff thereupon brought this action under the statute to recover the profits realized by defendants. Marjorie D. Kogan, a minority stockholder who had previously brought a representative suit under this statute against David A. Schulte individually, moved to intervene herein and to consolidate her representative suit with this one.[1] The District Court denied her motions, but permitted the United States of America to intervene pursuant to 28 U.S.C.A. § 401, because the constitutionality of § 16(b) was being questioned by the defendants herein. On the merits the District Court entered judgment for the plaintiff for $302,145.81, together with interest and costs. This sum represented the difference between the receipts realized from the sale of the common and the stipulated market value of the common on the conversion date. Defendants appeal from the judgment, and the minority stockholder appeals from the denial of her motion to intervene in the District Court. This court has already granted her motion for leave to intervene in this appeal, and has consolidated the two appeals for hearing and decision. The Securities and Exchange Commission has filed a brief amicus curiae urging affirmance of the recovery under the statute, and allowance of Kogan's motion to intervene.

We think a conversion of preferred into common stock followed by a sale within six months is a "purchase and sale" within the statutory language of § 16(b). Whatever doubt might otherwise exist as to whether a conversion is a "purchase" is dispelled by definition of "purchase" to include "any contract to buy, purchase, or otherwise acquire." § 3(a) (13). Defendants did not own the common stock in question before they exercised their option to convert; they did afterward. Therefore they acquired the stock, within the meaning of the Act. The Act certainly applies as well to executed acquisitions as to executory contracts to acquire. Not otherwise could the Act accomplish the Congressional purpose to protect the outside stockholders against at least short-swing speculation by insiders with advance information. Smolowe v. Delendo Corporation, supra, 2 Cir., 136 F.2d 231, 235, 148 A.L.R. 300; Kogan v. Schulte, D.C.S. D.N.Y., 61 F.Supp. 604.[2]

The transaction is not within the exception provided in § 16(b) for stock "acquired in good faith in connection with a debt previously contracted," since the exception is clearly inapplicable to anything except transactions in connection with actual debts. It is a strained concept, indeed, to regard preferred stock convertible into common as a debt here. Ownership of preferred or common stock creates an equity interest, and not a creditor's interest, under these circumstances. In re Phoenix Hotel Co. of Lexington, Ky., 6 Cir., 83 F.2d 724, 727, 728, certiorari denied Security Trust Co. v. Baker, 299 U.S. 568, 57 S.Ct. 31, 81 L.Ed. 418. Indeed, § 3(a) (11) of the Act, 15 U.S.C.A. § 78c(a) (11), defines "equity security" as "any stock or similar security; or any security convertible, with or without consideration, into such a security." The transaction may not, as defendants assert, be withdrawn from operation of the Act on the theory that the conversion was a forced, and not a voluntary, act by defendants. Whatever might be the

---

[1] In the representative action, Judge Leibell, while denying a summary judgment, nevertheless found the law in accordance with plaintiff's claims, in a reasoned opinion. Kogan v. Schulte, D.C.S.D.N.Y., 61 F.Supp. 604.

[2] But cf. 59 Harv.L.Rev. 998, 1946, criticizing the decision, but written, as the S. E. C. states in its brief, "without realization of the considerations which make the transaction herein susceptible to the abuses sought to be remedied by the statute."

considerations involved in that situation, it is clear that here defendants were not forced to convert, but instead made an everyday business decision as to the most profitable of three courses of action—redemption, conversion, or outright sale of their preferred. Indeed, the contention that defendants were forced to convert is somewhat absurd, in view of the fact that since defendants controlled plaintiff they could have prevented the passage of the redemption resolution or rescinded it after it had been passed.

■ Defendants' contention that § 16(b), as applied to the situation at bar, is unconstitutional is entirely without merit; indeed it is foreclosed by Smolowe v. Delendo Corporation, supra.

■ The minority stockholder urges that the judgment recovered by plaintiff was too small. She attempted to argue this or other points at the trial, but because intervention had been previously denied her, her counsel was not allowed to speak. Under our grant of permission to intervene on this appeal she is entitled to raise the point now, and we think it is well taken. Under the statute the amount recoverable by plaintiff is the receipts from the sale of the stock, minus the actual purchase price. The common stock in question here was purchased by exchanging preferred for it. Its purchase price was therefore the market value of the preferred on the conversion date, which was found by the district judge, and, indeed, conceded by the parties, to be $364,871. The preferred stock here involved could have been, and was, converted into common stock having a considerably higher market price.[3] This fact does not affect the selection of the figure representing the purchase price. Apparently not all preferred stock had actually been converted, and the record does not present facts explaining what might seem on the surface unusual discrepancies in market value. As between the two figures, the choice of the price of the preferred is more consistent with the purpose of the Act as expressed in Smolowe v. Delendo Corpora-

tion, supra, 2 Cir., 136 F.2d 231, 239, 148 A.L.R. 300. This is "to squeeze all possible profits out of stock transactions, and thus to establish a standard so high as to prevent any conflict between the selfish interest of a fiduciary officer, director, or stockholder and the faithful performance of his duty." The judgment entered by the District Court was based on the erroneous use of the market price of the common stock on the conversion date, as the purchase price. It should therefore be increased to $418,128.59, together with interest and costs.

■ With reference to Kogan's application to intervene below, we think, as we have indicated in allowing her to intervene here, that the interests of minority shareholders were not adequately represented by existing parties to the action. Under the circumstances here disclosed, the interests represented by defendants and their father were so dominant in the affairs of plaintiff that the District Court should have allowed stockholder representation to guard against even the appearance of any concerted action. As it turns out, plaintiff was at least ill-advised to concede the higher amount as the purchase price and to reduce its demand for judgment from an original $500,000 to the amount actually awarded below. But viewing this only as an error of judgment and disregarding Kogan's claims of a speculatively rigged market, we still have ample demonstration that the representation was inadequate and intervention should have been granted under Federal Rules of Civil Procedure, rule 24(a) (2), 28 U.S.C.A. following section 723c. Mack v. Passaic Nat. Bank & Trust Co., 3 Cir., 150 F.2d 474, 477; United States v. C. M. Lane Lifeboat Co., D.C.E.D.N.Y., 25 F.Supp. 410, affirmed 2 Cir., 118 F.2d 793, appeal dismissed C. M. Lane Lifeboat Co. v. United States, 314 U.S. 579, 62 S.Ct. 124, 86 L.Ed. 469; 2 Moore's Federal Practice § 24.07, page 2333. This right may be protected by appeal to this court. United States v. Philips, 8 Cir., 107 F. 824; United States Trust Co. of New York v. Chicago

---

[3] Kogan attacks this stipulated market price—$480,853.78—as based only upon a single purchase of 100 shares by Schulte— a point we need not examine upon our view of the case.

Terminal Transfer R. Co., 7 Cir., 188 F. 292, 296; 2 Moore's Federal Practice § 24.06, page 2332. On remand the stockholder is entitled to ask for counsel fees, payable out of the fund recovered. Smolowe v. Delendo Corporation, supra, 2 Cir., 136 F.2d 231, 241.

The order denying intervention to Kogan is reversed, the judgment is vacated, and the action is remanded to the District Court for the award of a judgment for $418,128.59 with interest and costs against the defendants, together with any allowance of counsel fees from the fund recovered found appropriate by the court. Costs in this court will be taxed against the defendants.

### On Petition for Rehearing.

Defendants now seek to get back to the position they were in after the judgment below. To do this they attack our reliance upon the stipulated value of the preferred stock, which they say was not market value, but only redemption price discounted back to the conversion date. And they contend that the stipulated value of the common stock must control, and thus reduce, the award of damages. Surprisingly they are supported by the plaintiff corporation, thus affording further demonstration of the need of direct stockholder representation herein. The stockholder Kogan has filed helpful briefs, and the Securities and Exchange Commission in its memorandum amicus curiae has given us persuasive reasons for adhering to our original decision.[1]

So far as the direct relief now prayed for is concerned, we think the petition certainly inadmissible. Though the record suggested little basis for the now asserted difference in evidential background for the two values in the minds of the parties,[2] yet in any event we attribute no decisive significance to the point. We adhere to the view that it is the value of the preferred stock, the property disposed of, which is the issue, and not the value of the common stock as such. And if evidence of market price of the preferred is not available, other standards of value may be resorted to, certainly including the corporation's promised payment on the fast-approaching redemption date. Cf. Dellefield v. Blockdel Realty Co., 2 Cir., 128 F.2d 85, 94–98.

Here the value agreed on was a rational and deliberate conclusion, not the product of haste or mistake. As the intervenor points out, it was necessary to defendants' theory of "forced conversion" by them as trustees that they establish a lower value for the preferred as it stood than it would command when converted.[3] This they alleged some six times in their answer and steadily asserted throughout the trial and on the original argument of this appeal. Indeed, the stipulation itself shows as much: "Will you concede that 6,604 shares of preferred stock of the plaintiff, including the right of conversion, were worth on January 19, 1944, $364,871?" with the reply, "The plaintiff concedes the facts, though I must say I cannot see its immediate rel-

---

[1] To the contentions that both Kogan and the Commission are estopped by previous positions taken, we think the answer clear that, as the former acts as fiduciary for other stockholders, the latter as representative of the public, no estoppel is permissible. Compare Federal Rules of Civil Procedure, rule 24(c), 28 U.S.C.A. following section 723c; Young v. Higbee Co., 324 U.S. 204, 65 S.Ct. 594, 89 L.Ed. 890. Moreover, the factual basis for such an estoppel seems at most the somewhat dubious one of possible temporary acceptance of a different theory of recovery—at best a matter for the court. Joint Council Dining Car Employees Local 370, etc. v. Delaware, L. & W. R. Co., 2 Cir., 157 F.2d 417, 420. In any event, the contention can hardly be pressed against Mrs. Kogan, for her counsel was peremptorily ordered to be seated at the trial before he had a chance to develop his theory. Whatever theory she may have asserted originally on petition for intervention, she is entitled to litigate fully on the merits now that intervention has been granted. • 2 Moore's Federal Practice 2375, 2376, 2388, 2389.

[2] That the common stock "sold for" the agreed amount, while the preferred stock "was worth" or "had a value of" the amount agreed as to it.

[3] Their thesis (rejected by us in our decision) was that the conversion being forced, there was not the "purchase" required by the statutory terms for the recovery of "insiders' profits."

evancy [sic]," followed by a like concession from the Government. So the court properly made the finding that this stock "had a value of" the agreed amount. Acceptance of the defendants' assertion that its actual "market value" was $480,853 (the stipulated price of an equivalent amount of common stock) is so great a departure as to require in any event more explanation than we have yet had and to appear quite inadmissible when we consider the serious doubts adverted to below which have been raised as to the existence of a bona fide market value for that stock. In other words, if we reject the one stipulation we should surely reject the other, treating this as a petition by defendants to be relieved from both stipulations and for trial on the merits of the issues of value.[4]

But both because no party has actually requested this course and because we think a long trial really holds out no promise of clearer demonstration of controlling value than is afforded by what is already before us, we have concluded that the case should not be reopened at this stage for such a trial. We have already referred to the evidences of care and deliberation shown in the making of the stipulation, and indicated that if defendants now desired its repudiation they should have made some showing, other than the mere assertion of a different legal principle of damage, of available evidence for a more nearly accurate valuation of the preferred stock. As a matter of fact, however, the indications from the record, and from the facts of market quotations of which we may take judicial notice, really point the other way. There was very little outside holding of the preferred stock, and, so far as appears, no existing market for it. What price it would have commanded on sale is problematical. The dumping of such a large block of preferred stock as is here involved would almost certainly have depressed its price. To avoid this, the sellers would have had to spread their sales over a period of some months. But no such period was available, since the redemption date was about two months away and the conversion privilege would then be lost. Without the conversion privilege, of course, the price of the preferred would bear no appreciable relationship to the price of the common stock. Moreover, as the S. E. C. points out, since the defendants controlled the plaintiff corporation, it appears that they could not legally have disposed of their preferred, using the mails and means of interstate commerce, without securing approval of a registration statement from the Commission. Matter of Ira Haupt & Co., SEC Release No. 3845, Aug. 21, 1946. Complying with this requirement would have eaten into or completely used up the two months' time. Even more important, it is impossible to determine what adverse effect the disclosures required in the registration statement would have had upon the price. All these factors are compelling to suggest that the real value of the preferred stock is not accurately reflected by the value on the same date of an equivalent amount of the common stock.

But further, we think that under the circumstances here the market quotation of the common stock, as stipulated, cannot be accepted as showing the true value of that stock. The quoted price of that stock on the conversion date appears to have been obtained from the purchase price of 100 shares then purchased by Schulte, Sr. Even disregarding his interest in the case, we cannot accept the price on so small a sale as a potential sale price of the entire block of defendants' converted stock. Moreover, the stock exchange quotations on plaintiff's common stock for the period in suit were apparently grossly inflated. Between the date of conversion and the date when defendants completed their sales, January 19 to May 26, the quoted price increased by over 50 per cent, or almost $30 per share. In the next month it fell by a much greater amount or more than $68 per share. Yet the record is bare of any indication that plaintiff's asset and liability position underwent any similar change during this period. As a matter of fact,

---

[4] If a trial were to be ordered, it should be open to the stockholders to show, if they can, that the redemption price of the preferred, set by those who controlled the corporation, was not a fair reflection of intrinsic value. As yet, of course, there has been no contention that this price was also too high.

the evidence recited by the Commission in Matter of Ira Haupt & Co., supra, lends credence to Kogan's contention of market manipulations by the Schulte interests to set the market price. While we cannot accept the facts there found as true in this collateral proceeding, that case does show the nature of the evidence which a trial would bring forth and the debatable nature of any value based upon a figure developed out of the very transactions by the insiders which have led to the secret profits made the property of the corporation by the statute. Under the circumstances the stipulated value developed from the discounted redemption price seems to us intrinsically the sounder base for the computation of such profits.

Petition denied.

SWAN, Circuit Judge (dissenting).

I am unable to concur in my brothers' adherence to the judgment announced in our original opinion. That opinion was based on the premise that "the market value of the preferred on the conversion date" was "found by the district judge, and, indeed, conceded by the parties, to be $364,871." In so stating, we misinterpreted the finding of the judge and the stipulation of the parties upon which it rested. The figure $364,871 did not represent "market value"; it represented the redemption value $368,173 ($55 per share plus dividends accrued to March 20, 1944) discounted back to the conversion date, January 19, 1944. The complaint alleged, the answer admitted, the parties stipulated, and the district judge found that on January 19, 1944 the 8,255 shares of common into which the 6,604 shares of preferred were converted had a market value of $480,853.78.[1] If that finding stands, it seems plain to me that the value of the preferred for purposes of conversion was $480,853.78, and that we are not justified in holding that its conversion value was identical with its redemption value. My brothers say that the market quotation of the common stock, as stipulated, cannot be accepted as showing the true value of that stock. That question was never litigated below.[2] It was first suggested on the appeal in the reply brief of intervenor Kogan. In her motion for leave to intervene, from the denial of which she appealed, her counsel's affidavit stated that "the movant consents to proceed to a trial of this action upon the pleadings of all the parties presently on file herein." As already noted, both the complaint and the defendants' amended answer alleged that the market value of 8,255 shares of common stock on January 19, 1944 was $480,853.75. If an intervenor who represents a class is to be allowed to raise an issue which he expressly disclaimed in his motion for intervention, the utmost we should do for him, in my opinion, is to send the case back for trial on that issue.

[1] There is a discrepancy of 3 cents; the pleadings and stipulation used the figure $480,853.75.

[2] The Securities and Exchange Commission, which participated as amicus curiae, were content in the court below and in their brief on the appeal arguing for affirmance to have the damages measured "on the basis of the market value as of the date of conversion of the common stock into which the preferred was converted," but in the memorandum filed at the court's request in answer to the petition for rehearing, they repudiate that position and say that their present views "represent some development in our own analysis of the problems since our original participation."