**HELI–COIL CORPORATION, Plaintiff,**

v.

**Reginald WEBSTER, Defendant.**

**Civ. A. No. 680–60.**

United States District Court
New Jersey.

Oct. 24, 1963.

Emory C. Risley, for Stryker, Tams & Dill, Newark, N. J., for plaintiff.

Charles Danzig, for Riker, Danzig, Scherer & Brown, Newark, N. J., for defendant.

AUGELLI, District Judge.

This is an action by the corporate plaintiff against one of its directors to recover "insider profits" under section 16(b) of the Securities Exchange Act of 1934 (Act), 15 U.S.C.A. § 78p(b). Jurisdiction is conferred by section 27 of the Act, 15 U.S.C.A. § 78aa, as amended. The matter was tried to the Court, sitting without a jury, and the following facts were stipulated by the parties:

Plaintiff Heli-Coil Corporation was incorporated under the laws of the State of Delaware on October 16, 1958. Defendant Reginald Webster is a resident of New Jersey, and became a director of plaintiff on October 16, 1958, and has been such director since that time.

On November 20, 1958, defendant purchased, at par and accrued interest, $60,-000.00 principal amount of plaintiff's 5% callable debentures dated November 1, 1958 and due November 1, 1973. These debentures were convertible, at the option of the holder, into common stock of plaintiff at any time prior to redemption or maturity, at the conversion price of $16⅔ per share, subject to adjustment as provided in the Indenture under which the debentures were issued.

On November 20, 1958, defendant also purchased in the open market 500 shares of plaintiff's common stock at $14.50 per share. At this time, such stock was not registered on a national securities exchange. On December 11, the American Stock Exchange approved an application by plaintiff for the listing of 278,000 shares of its common stock, $1.00 par value, and on December 17, the Securities and Exchange Commission ordered the immediate registration of such stock on said Exchange.

On March 18, 1959, defendant exercised his option to convert his debentures, and in connection therewith received 3,600 shares of plaintiff's common stock, $1.00 par value. Plaintiff had never called defendant's convertible debentures for redemption and such debentures were never registered on a national securities exchange, but they were traded in the over-the-counter market.

On July 16, 1959, defendant sold 1,000 shares of the common stock of plaintiff for $69,470.60; on August 26, another 200 shares for $14,293.55; and on September 1, an additional 100 shares for $7,096.86.

Section 16(b) of the Act, in pertinent part, reads as follows:

"For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months, unless such security was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months. Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer * * *."

The complaint is in two counts. In the first count, plaintiff seeks to recover all profits realized by defendant as a result of his conversion on March 18, 1959 of the $60,000.00 principal amount of convertible debentures, purchased on

November 20, 1958, into 3,600 shares of plaintiff's common stock. In the second count, plaintiff seeks to recover defendant's profits from his sales of 1,000 shares of plaintiff's common stock on July 16, 1959, 200 shares on August 26, and 100 shares on September 1, all within a period of less than six months after the March 18, 1959 conversion. Plaintiff claims total damages on both counts of $116,544.37 plus interest, which constitute defendant's alleged profits on the above transactions under section 16 (b) of the Act.

Defendant has filed an answer in which he denies any liability under section 16(b) of the Act, and sets up a number of separate defenses. He contends that he acted in good faith without the use of any inside information in making the sales of common stock; that he did not realize a profit on the conversion of the debentures; that the conversion of the debentures was not a sale of equity securities; that such conversion did not result in a purchase of the 3,600 shares of common within the meaning of section 16(b); that since the debentures were not registered on a national securities exchange at any time and since plaintiff had no equity securities registered on such an exchange at the time the debentures were acquired, the conversion was not subject to section 16(b); and that defendant acquired the 3,600 shares of common stock on March 18, 1959 in good faith in connection with a debt previously contracted (the debentures), and therefore the acquisition and subsequent sale of the common stock were exempt from section 16(b).

■ The basic issue in this case is whether defendant's conversion of the debentures into common stock on March 18, 1959 constituted a "sale" of the debentures and a "purchase" of the common stock within the meaning of section 16(b) of the Act. Both convertible debentures and common stock are unexempted "equity securities" under section 3(a) (10), (11) and (12) of the Act, 15 U.S.C.A. § 78c(a) (10), (11) and (12).

Therefore, if this basic issue is resolved in plaintiff's favor, unless some exception is applicable, the purchase of the debentures on November 20, 1958 and the sales of the common stock on July 16, August 26 and September 1, 1959 would subject defendant to liability on both counts of the complaint.

The words "purchase" and "sale" are both defined by the Act, in sections 3(a) (13) and (14), 15 U.S.C.A. § 78c(a) (13) and (14), to include, respectively, "any contract to buy, purchase, or otherwise acquire" and "any contract to sell or otherwise dispose of". The conversion transaction in this case would appear to come within these definitions as to both the disposition made of the debentures and the acquisition of the common stock. Two cases have been called to the Court's attention which deal with the meaning of the term "purchase" in a conversion situation. They are Park & Tilford v. Schulte, 160 F.2d 984 (2 Cir. 1947), cert. den. 332 U.S. 761, 68 S.Ct. 64, 92 L.Ed. 347, and Ferraiolo v. Newman, 259 F.2d 342 (6 Cir. 1958), cert. den. 359 U.S. 927, 79 S.Ct. 606, 3 L.Ed.2d 629. Although these cases do not specifically involve the question of whether a conversion results in a "sale" of the convertible security, their ratio decidendi would seem equally applicable to that issue. Logically, if converting one security into another results in a "purchase" of the second security, it should follow that it also results in a "sale" of the first security within the statutory definitions of "purchase" and "sale". See Blau v. Lamb, 163 F.Supp. 528 (S.D.N.Y.1958).

Both Park & Tilford and Ferraiolo involved the conversion of preferred stock into common followed by a sale of the common within six months after the conversion. In Park & Tilford the court found that the acquisition of common stock as a result of conversion was a "purchase" within the meaning of section 16(b) of the Act, while the court in Ferraiolo reached a contrary result. From these and other cases, the following test can be said to emerge for determin-

ing whether a particular conversion transaction constitutes a "purchase" or "sale": was the conversion the type of transaction that could possibly have lent itself to the short-term speculation that section 16(b) seeks to prohibit? See Blau v. Lehman, 286 F.2d 786, 792 (2 Cir. 1960); Loss, Securities Regulation, pp. 1041, 1066–71 (2nd Edition 1961). The actual use or knowledge of inside information is, of course, not a necessary element in this regard. Smolowe v. Delendo Corp., 136 F.2d 231 (2 Cir. 1943); cert. den. 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446; Ferraiolo v. Newman, supra; Rheem Manufacturing Co. v. Rheem, 295 F.2d 473 (9 Cir. 1961). Of course, where the circumstances indicate that a conversion could not in any way have been motivated by a desire to engage in such speculation, the purpose of section 16(b) would not be served by calling the transaction a "purchase" or "sale" within the meaning of its language.

Defendant contends that the case at bar is governed by Ferraiolo because in this case, as in that, convertibility was protected against dilution, and the convertible securities could be considered economic equivalents in market price to the common stock. The argument is that defendant's interest in the corporation was not materially changed by the conversion and that therefore the conversion should not be considered a "sale" and a "purchase" under section 16(b). While both cases do appear to have this element in common, the Court feels that it was the involuntary nature of the conversion in Ferraiolo that was a determinative factor in that case. In both Ferraiolo and Park & Tilford, the corporate plaintiffs had called the defendants' preferred stock for redemption, but in Park & Tilford the court held that the conversion was not forced because the defendants controlled the corporation which passed the redemption resolution. The conversion effected here by defendant on March 18, 1959 was not the result of a call of the debentures for redemption by plaintiff. It was completely voluntary. Defendant was under no compulsion to take any action with respect to his debentures. He could have continued to hold them, or he could have sold them and pocketed the cash, or he could have converted them into common stock. In this Court's opinion, by his voluntary act of converting, defendant brought himself within the rationale of both the Park & Tilford and Ferraiolo decisions, and engaged in a transaction which could have resulted in the short term speculation which section 16(b) is designed to prevent. Essentially, it is the same as if defendant, on March 18, 1959, sold his debentures on the open market for cash, and with that cash purchased the 3,600 shares of common stock he received upon conversion. As a result of the original purchase of the debentures on November 20, 1958, and the subsequent sales of the common stock within 6 months of the conversion transaction on March 18, 1959, defendant has engaged in a "purchase and sale" of both the debentures and the common stock within the meaning of section 16(b) of the Act.

Defendant also argues that the shares of common stock "purchased" on March 18, 1959 were "acquired in good faith in connection with a debt previously contracted", and that, therefore, the transaction was expressly excepted from the language of section 16(b). The debentures purchased on November 20, 1958 are said to constitute a debt previously contracted by plaintiff to defendant. The acquisition of the common stock through conversion of the debentures, it is urged, resulted in the cancellation of that debt. To support this contention, defendant relies on Rheem Manufacturing Co. v. Rheem, supra, and Smolowe v. Delendo Corp., supra. In Rheem, the defendant had acquired corporate stock in exchange for his interest in the company retirement plan, under which the company was obligated to pay him a fixed sum upon retirement. In Smolowe, one of the defendants had paid a debt to another of the defendants with corporate stock. The courts, in both of these cases, held that the stock so obtained was "acquired in good faith in connection with a

debt previously contracted" under section 16(b). But these cases are not controlling because they involved good faith settlements of independent and matured obligations. On the other hand, the instant case involves a conversion of debentures into common stock pursuant to the terms of an Indenture under which they were issued. The debentures here were not to mature until November 1973, and were subject to a number of conditions which negative the generally accepted concept of a "matured debt", such as a right of redemption, convertibility into common stock, adjustment of conversion price to protect against dilution, and so forth. It is also to be noted that the debentures in this case qualify as equity securities under section 3(a) (11) of the Act. In a somewhat analogous situation the court, in Park & Tilford v. Schulte, supra, 160 F.2d at page 987, held that preferred stock, which was convertible into common stock, could not be considered a "debt" of the issuing corporation

In addition, defendant contends that the transactions in question were not subject to section 16(b) because the debentures were never registered on a national securities exchange, and because the common stock was likewise not registered at the time the debentures were originally purchased. Section 16(b), of course, does not specifically refer to registration on a national securities exchange. But that section must be read together with section 16(a) in order to determine who is the "such * * * director" who may be liable under section 16(b). Section 16(a) requires certain directors to file statements of their holdings of all equity securities of the corporation of which they are directors.[1] An individual qualifies as "such * * * director" if he is the director of a corporation which has issued "any equity security * * * which is registered on a national securities exchange". Thus, a defendant who is the director of a corporation which has *any* equity securities registered on an exchange, must report *all* his equity securities of that corporation under section 16(a). Likewise, he would qualify as "such * * * director" who might be liable under section 16(b). In this case, in order for the defendant to be liable under section 16 (b), it is unnecessary that the debentures be registered as long as the common stock is registered. Nor is it necessary that the common stock be registered at the time the debentures were originally purchased, as long as the common stock was registered at the time the debentures were sold. See Perfect Photo, Inc. v. Grabb, 205 F.Supp. 569, 572 (E.D.Pa. 1962). Therefore, the registration of the common stock on a national securities exchange at the time of the conversion on March 18, 1959 is sufficient to bring these transactions under Section 16(b) of the Act.

Finally, defendant has argued that the conversion of the debentures into common stock on March 18, 1959 constituted arbitrage, which is expressly excluded from the operation of section 16 (b) by section 16(d). Section 16(d) states that:

"The provisions of this section [16] shall not apply to foreign or domestic arbitrage transactions unless made in contravention of such rules and regulations as the Commission may adopt in order to carry out the purposes of this section."

However, plaintiff has pointed out that the Securities and Exchange Commission, pursuant to section 16(d), adopted

---

1. Section 16(a) of the Act, 15 U.S.C.A. § 78p(a) provides, in pertinent part, as follows:

"Every person who is directly or indirectly the beneficial owner of more than 10 per centum of any class of any equity security (other than an exempted security) which is registered on a national securities exchange, or who is a director or an officer of the issuer of such security, shall file, at the time of the registration of such security or within ten days after he becomes such beneficial owner, director, or officer, a statement with the exchange * * * of the amount of all equity securities of such issuer of which he is the beneficial owner * * *."

Rule X–16D–1, which provides, in pertinent part, as follows:

"It shall be unlawful for any director, or officer of an issuer of an equity security which is registered on a national securities exchange to effect any foreign or domestic arbitrage transaction in any equity security of such issuer, whether registered or not, unless he * * * shall account to such issuer for the profits arising from such transaction, as provided in section 16(b). * * * "

This Rule clearly makes arbitrage transactions by a director of an issuer subject to the provisions of section 16(b)[2]. The case of Falco v. Donner Foundation, 208 F.2d 600, 40 A.L.R.2d 1340 (2 Cir. 1953), cited by defendant, is distinguishable since that case concerns a suit against a 10% beneficial owner rather than a director or officer (see note 1 at page 603 of 208 F.2d). In any event, arbitrage is not involved in a conversion situation where "a substantial interval and market movement separated the acquisition and disposal" of the various securities. Falco v. Donner Foundation, supra, 208 F.2d at page 604 (note 4).

Having determined that defendant is liable for "any profit realized by him" from the "purchase and sale" of the debentures and from the "purchase and sale" of the common stock, the Court now turns to the question of computation of that profit under section 16(b).

█ The cases decided under section 16(b) establish the rule that in determining profit, the highest sale prices are to be matched with the lowest purchase prices within the periods involved. Smolowe v. Delendo Corp., supra; Park & Tilford v. Schulte, supra; Gratz v. Claughton, 187 F.2d 46 (2 Cir. 1951), cert. den. 341 U.S. 920, 71 S.Ct. 741, 95 L.Ed. 1353; Loss, supra, at pages 1062–1066. This rule is in accordance with the statutory intent "to squeeze all possible profits out of stock transactions". Smo-

lowe v. Delendo Corp., supra, 136 F.2d at page 239. It is a rejection of the first-in-first-out rule, and a rule that would permit the matching of purchases and sales of the same stock certificates. It makes irrelevant the fact that defendant delivered the 200 shares of the August 26, 1959 sale out of a lot of 500 shares purchased by him on November 20, 1958, more than six months before such sale.

█ Applying the above principles with respect to profit on the sale of the debentures on March 18, 1959, the evidence discloses that on that date when defendant received 3,600 shares of common stock for his debentures, the highest sale price of the stock on the American Stock Exchange was 36½. The debentures may thus be valued at $131,400.00, representing the value of the 3,600 shares of common stock as 36½ that defendant received for them. Since the original cost of the debentures had been $60,000.00, defendant's profit on this transaction would be $71,400.00.

As to the profit on the sales of the 1,300 shares of common stock on July 16, August 26 and September 1, 1959, the evidence shows that on March 17, 1959, the day prior to the conversion, a bona fide sale of a $1,000.00 debenture was made in the over-the-counter market at a price of $2,110.00 plus accrued interest. Thus, a sale of $60,000.00 of the debentures on March 18, 1959 would have brought $126,600.00. The 1,300 shares actually sold are 36.1111% of the total of 3,600 shares obtained by defendant as a result of his conversion of the debentures. The common stock may then be valued at the time of purchase at $45,716.65, which represents 36.1111% of the $126,000.00 that defendant's debentures could have brought at conversion. See Park & Tilford v. Schulte, supra, 160 F.2d at page 988. Since defendant had received a total of $90,861.01 from these transactions, his profit would amount to $45,144.36.

2. The Court does not consider defendant's claim that Rule X–16D–1 is unconstitutional in view of its conclusion that arbitrage under section 16(d) is not involved here.

Judgment will be entered in favor of plaintiff against the defendant for the sum of $116,544.36. Plaintiff's claim for interest will be denied. See Blau v. Lehman, 368 U.S. 403, 414, 82 S.Ct. 451, 7 L.Ed.2d 403 (1962).

This opinion shall constitute the findings of fact and conclusions of law required by Rule 52(a) of the Federal Rules of Civil Procedure. Counsel for plaintiff is directed to submit an appropriate order on notice to counsel for defendant.