Alonzo PETTEYS and C. Frank Reavis,
Plaintiffs,

v.

NORTHWEST AIRLINES, INC.,
Defendant,

and

Eunice S. Butler, Intervenor.

Isadore BLAU, Plaintiff,

v.

Alonzo PETTEYS, C. Frank Reavis and
Northwest Airlines, Inc., Defendants.

Nos. 4-64 Civ. 210, 306.

United States District Court
D. Minnesota,
Fourth Division.

Aug. 4, 1965.

Richard W. Johnson, of Neville, John-son & Thompson, Minneapolis, Minn., for plaintiffs-defendants Petteys and Reavis.

Morris J. Levy, New York City (Felix M. Phillips and Bert Gross, of Shanedling, Phillips, Gross & Aaron, Minneapolis, Minn., of counsel), for plaintiff Blau.

Bernard G. Heinzen, of Dorsey, Owen, Marquart, Windhorst & West, Minneapolis, Minn., for defendant.

John L. Hannaford and Richard J. Leonard, of Doherty, Rumble & Butler, St. Paul, Minn., for intervener.

NORDBYE, District Judge.

The plaintiffs-defendants Alonzo Petteys and C. Frank Reavis, the intervener, Eunice S. Butler, and the plaintiff Isadore Blau each have moved for a summary judgment.

Concededly, these proceedings are ripe for the consideration of the respective motions. The factual issues are not in dispute. Plaintiffs Petteys and Reavis originally brought an action in this Court against Northwest Airlines, Inc., seeking judgment that they were not accountable to this defendant under Sections 16(a) and (b) * of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78p(a) and 78p (b), for any profit realized by them with respect to the sale of Petteys's 4,808 shares of common stock and Reavis's 1,123 shares of common stock of Northwest Airlines, Inc., held less than six months after acquisition. Subsequently, on July 8, 1964, Eunice S. Butler, a stockholder in Northwest, intervened in this action. She seeks judgment in behalf of Northwest against these plaintiffs with respect to certain profits realized in the sale of this common stock. At or about this time, the plaintiff Blau, another Northwest stockholder, instituted an action in the District Court of the Southern District of New York against Petteys, Reavis and Northwest seeking judgment against the individual defendants for the profits realized in the same sale of common stock involved in the Minnesota litigation. The New York case was removed to this District, and both cases are combined so far as the motions involved herein are concerned.

At the time of the sale of their holdings, Alonzo Petteys and C. Frank Reavis were, and now are, directors of Northwest Airlines. On January 14, 1963, the Board of Directors of Northwest passed a resolution calling the corporation's convertible preferred stock, some 449,615 shares, for redemption on or before February 14, 1963, at $26.16 per share. At the time of the resolution, both common and its convertible preferred were listed upon the New York Stock Exchange. Directors Petteys and Reavis, who were holders of preferred stock, each voted in favor of the redemption resolution. There were 13 directors of Northwest at the meeting, all of whom voted in favor of the redemption. One director apparently was absent. At no time did the two directors here involved have any so-called control of Northwest, and the unanimous vote of the 13 directors in favor of the resolution must be considered as constituting an independent vote of each of the directors present. The two directors here involved had held their preferred stock for more than six months, and in view of the protection against dilution, the market price of the preferred closely followed the common. Both Petteys and Reavis held some common stock before the resolution of January 14, 1963.

On January 17, 1963, Petteys converted 5,000 shares of Northwest preferred stock when the market price was between $35⅛ and $35¼ and received 4,808 shares of common stock in exchange

---

* "For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months, unless such security was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months. Suit to recover such profit may be instituted at law or

in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized. This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security involved, or any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection."

therefor. On January 31, 1963, Reavis converted 1,167 shares of Northwest preferred stock which then had a market price of substantially $38¼ and received 1,123 shares of common stock in exchange therefor. Between May 20, 1963, and June 18, 1963, Petteys sold 9,808 shares of Northwest common stock at prices ranging from $51 to $55½ per share. On June 5, 1963, Reavis sold 1,600 shares of Northwest common at prices ranging from $53¼ to $53⅝ per share. The profits obtained on the common stock held less than six months and sold as above stated by these two directors are in issue here.

In pursuance of the resolution of the Board of Directors of Northwest calling for a redemption of the outstanding preferred stock, the holders thereof were given three options. They could sell their stock on the open market, surrender it at the redemption price of some $26 per share, or convert it into common stock. Rather than sustain a substantial loss on redemption, some 99.98% of the holders of the preferred stock exercised their option to convert before the February 14th deadline.

The case presents questions which have frequently been before the courts in proceedings under Sections 16(a) and (b) of the Securities Exchange Act of 1934. The reasons for enacting this legislation and the abuses to be corrected are generally recognized by all the courts which have considered similar proceedings under the Act. But as usual the difference in the factual situations, coupled with either a strict or liberal interpretation of the Act, have resulted in conflicting decisions. See particularly Park & Tilford, Inc. v. Schulte, 160 F.2d 984 (2 Cir. 1947), and Ferraiolo v. Newman, 259 F.2d 342 (6 Cir. 1958). In each of these cases, certiorari was denied.

Admittedly, if these two directors had purchased this common stock in the open market and sold it within the six months' period, no one would question their liability under the Act to disgorge any profits made by the sale or sales. It would not be necessary to establish that they had any inside information which enabled them to make a profitable sale. That seems indisputably clear from Smolowe v. Delendo Corporation, 136 F.2d 231, 148 A.L.R. 300 (2 Cir. 1943), certiorari denied, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446, and Gratz v. Claughton, 187 F.2d 46 (2 Cir. 1951), certiorari denied, 341 U.S. 920, 71 S.Ct. 741, 95 L.Ed. 1353. In the Smolowe case, Judge Clark stated, 136 F.2d at p. 236,

"A subjective standard of proof, requiring a showing of an actual unfair use of inside information, would render senseless the provisions of the legislation limiting the liability period to six months, making an intention to profit during that period immaterial, and exempting transactions wherein there is a bona fide acquisition of stock in connection with a previously contracted debt. It would also torture the conditional 'may' in the preamble into a conclusive 'shall have' or 'has.' And its total effect would be to render the statute little more of an incentive to insiders to refrain from profiteering at the expense of the outside stockholder than are the common-law rules of liability; it would impose a more stringent statute of limitation upon the party aggrieved at the same time that it allowed the wrongdoer to share in the spoils of recovery."

Moreover, it is not necessary to establish that the transactions here involved were "purchases" as that term is generally considered in order to bring a director, officer or beneficial owner within the ambit of the Act. The Securities Exchange Act, Section 3(a) (13) (15 U.S.C. § 78c(a) (13) provides that "The terms 'buy' and 'purchase' each include any contract to buy, purchase, or otherwise acquire." Clearly, these directors voluntarily acquired their converted common stock.

The evils which Congress sought to eradicate can be achieved by an "acquisition" of stock by an officer, director, or beneficial owner by various means just as readily as an outright pur-

chase on the market or otherwise and a sale at a profit within the six months' period. It is urged that the relationship of the preferred to the common did not vary to any extent; that is, the price of the preferred closely followed the common, and because of preferred's conversion rights, the "economic identity in the market place followed." But, obviously, that argument does not relieve these directors of the obligation to refrain from "short swing" profits when, by their own voluntary act, they changed their status from preferred stockholders to common—resulting in a changed equity interest in the corporation. And whether their preferred stock was an economic equivalent to the common in market parlance did not relieve them from the limitations imposed in the acquisition of their common stock. Surely, if it was evident that, by reason of some inside information inuring to them which would effect an appreciation of Northwest's common stock, and availing themselves of this information they sold their stock and made a profit, the so-called economic equivalent doctrine would not relieve them from the impact of the Act in question. But these directors contend that there was in effect an involuntary conversion; that is, they urge that they would have lost an appreciable sum per share if they had allowed their preferred stock to be redeemed or sold. But, in considering the remedial purposes of the Act, in reality the opportunity for short term speculation remained the same whether the ownership of the common stock was achieved by conversion or by purchase. Therefore, whether the acquisition of the stock was voluntary or involuntary, the sales were voluntary, and it is the profit from a voluntary sale within the six months' period which the law seeks to curtail. Indeed, it cannot be said that the conversion adopted by these directors did not afford them the same opportunity for obtaining inside information as an outright purchase would secure as to any future appreciation of their common stock acquisition. It must be remembered that it is the opportunity

to engage in short term speculation which the Act seeks to eradicate by the seemingly harsh and rigid limitations which the law imposes upon insiders with reference to profit made on stock sold within six months after acquisition.

No good purpose will be achieved in attempting to reconcile Park & Tilford, Inc. v. Schulte and Ferraiolo v. Newman, supra. Obviously, the facts in these two cases are different. The more recent cases have tended to follow the stricter rule laid down in Park & Tilford, Inc. v. Schulte, supra. See Blau v. Lehman, 286 F.2d 786 (2 Cir. 1961); Booth v. Varian Associates, 334 F.2d 1 (1 Cir. 1964); Heli-Coil Corp. v. Webster, 222 F.Supp. 831 (D.N.J.1963). But see Blau v. Max Factor & Co., 342 F.2d 304 (9 Cir. 1965). If the directors' acquisition of the common stock of Northwest is a purchase within the meaning of the Act, and in view of its broad definition of the term "purchase" that conclusion seems to be a sound deduction, then it seems inescapable that this type of transaction was one which could have lent itself to the short term speculation that Section 16(b) was enacted to prevent and the Act applies.

These directors were active and would be privy to inside information which would bear upon the company's future plans and prospects. Reference may be made to the resolution of the Northwest directorate increasing the dividends on common stock from 20 to 25 cents, which resolution was passed only eleven days after the terminal date for redeeming the preferred stock. Although the showing herein may not justify a finding that the raising of the dividends had any direct, causal relation to the rise in the market value of the common stock, or that this anticipated increase motivated these directors in voting for redemption, these circumstances do tend to support the contention that this conversion by insiders could readily lend itself to the abuses which the Act intended to prevent. The facts in the recent case of Western Auto Supply Company v. Gamble-Skogmo, Inc., 8 Cir., 348 F.2d 736, do not bear directly upon the

530

issues presented herein. However, there the court stated that "the authorities construing § 16(b) require the forfeiture of the profits by an insider irrespective of his good faith or intentions which motivate his trading." (Citing cases). So, here, regardless of the good faith of these two directors in apparently assuming that their conversion from preferred to common stockholders in Northwest did not bring them within the Act, the inexorable provisions thereof require the conclusions reached herein.

After due consideration, the Court finds, therefore, that the motions for summary judgment in behalf of the intervener, Eunice S. But'er, and Isadore Blau, plaintiff, must be granted, and the motion for summary judgment made in behalf of Alonzo Petteys and C. Frank Reavis must be denied. It is so ordered. Exceptions are reserved.

An order consistent with the foregoing may be presented by movants Butler and Blau upon ten days' notice, and upon presentation of the proposed order the amount of recovery, including dividends received during the six months' period and prior to sale, and attorneys' fees and costs, will be considered and determined.