Isadore BLAU, a stockholder of Tide Water Associated Oil Company, suing on behalf of himself and all other stockholders similarly situated and on behalf of and in the right of Tide Water Associated Oil Company, Plaintiff,

v.

Robert LEHMAN et al., a co-partnership, doing business under the firm name and style of Lehman Brothers, Joseph A. Thomas and Tide Water Associated Oil Company, Defendants.

United States District Court
S. D. New York.
May 22, 1959.

Morris J. Levy, New York City, for plaintiff.

Simpson, Thacher & Bartlett, New York City, for defendants Lehman Bros. and Joseph A. Thomas, Cyrus R. Vance, Robert S. Carlson, New York City, of counsel.

Leve, Hecht, Hadfield & McAlpin, New York City, for defendant Tide Water Associated Oil Co.

DAWSON, District Judge.

This is an action based upon § 16(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78p(b),[1] in which plaintiff, a

---

1. Section 16(b) reads as follows:

"For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months, unless such security was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months. Suit to

shareholder of defendant Tide Water Associated Oil Company (hereinafter called "Tide Water"), seeks an accounting by defendants other than Tide Water of certain profits realized from alleged purchases and sales of securities within a period of less than six months.

This action was tried by the Court without a jury and the following are the findings of fact of the Court:

At all material times the securities of defendant Tide Water were registered on the New York Stock Exchange. Defendant Joseph A. Thomas was, at the time of the transactions here involved, a director of Tide Water and also a member of a partnership doing business as Lehman Brothers. In 1954 under the partnership agreement Thomas was entitled to receive 4% of the first 47.05% of the profits and 1.85% of the remaining 52.95% of the profits. In 1955 he was entitled to receive 4% of the first 44.05% of the profits, plus 1.85% of the remaining 55.95%.

In 1954, at the age of 76, defendant John Hertz, then a partner of Lehman Brothers, resigned his directorship of Tide Water. After resigning he spoke with Mr. Staples, President of Tide Water, and recommended defendant Thomas as a prospective director of Tide Water. Hertz then asked Thomas whether he would like to become a director of Tide Water and Thomas said that he would. Mr. Thomas was then introduced to Mr. Staples at the home of John Schiff, a friend of Mr. Thomas and a partner of Kuhn, Loeb & Company. Staples and Thomas then met several times, culminating in Staples asking Thomas if he would like to be a director. The invitation to join the Tide Water Board was upon the initiative of Tide Water. Thomas accepted the directorship because of his interest in the oil business and because of the prestige factor in serving on the Board of a large corporation.

Between October 8, 1954 and November 15, 1954, the partnership, Lehman Brothers, purchased in the regular course of its business 50,000 shares of Tide Water common stock at an aggregate cost of $1,330,800. The purchase of these shares by Lehman Brothers was made at the direction of the partners constituting the investment committee of the firm, of which Thomas was not a member, and he was not consulted by his partners as to the proposed plan of recapitalization of Tide Water, or with reference to any of the affairs of Tide Water, except to say to them that he believed it was a good company under good management. The Court finds as a fact that the stock of Tide Water was bought and sold by Lehman Brothers without any advice or concurrence of Thomas, or without his knowledge until after the transactions had taken place.

Pursuant to a plan of recapitalization, Lehman Brothers exchanged its 50,000 shares of common stock on December 8, 1954 for 50,000 shares of a new preferred stock issued by Tide Water. Between December 9, 1954 and March 8, 1955, Lehman Brothers sold its 50,000 shares of preferred stock realizing in the aggregate the sum of $1,361,186.77. Lehman Brothers' purchases of Tide Water common stock were made upon the basis of two articles published in the Wall Street Journal. The first of these articles appeared on September 17, 1954. In it Tide Water announced that it was considering a proposal to allow shareholders to exchange common stock for a new dividend-paying preferred stock. On October 8,

recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized. This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security involved, or any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection."

1954 a second article appeared in the Wall Street Journal which announced that the Tide Water board of directors had approved a plan of recapitalization under which it proposed to create an issue of $1.20 dividend cumulative preferred stock and under which plan all holders of its common stock could exchange their common stock on a share-for-share basis for the new dividend-paying cumulative preferred stock.

Beginning on October 8, 1954, after the plan of recapitalization had been approved by the Tide Water board and had become public information, Lehman Brothers, planning to convert Tide Water common into Tide Water preferred, and acting solely on the basis of Tide Water's public announcements and without consulting Thomas with reference thereto, purchased the 50,000 shares of Tide Water common stock which were exchanged for an equal number of shares of the newly issued preferred stock on December 8, 1954. By March 9, 1955 Lehman Brothers had sold all the preferred stock.

Joseph A. Thomas, who had served as a director of Tide Water since August 5, 1954, from the outset completely revealed the firm's transactions just described by filing monthly statements with the Securities and Exchange Commission for October, November and December, 1954 and January, February and March, 1955.

When Thomas learned that his firm had purchased shares of stock in Tide Water, of which he was then a director, he orally indicated to his partners that he wished to be disassociated with the transaction and that he waived his interest in it. According to his testimony he made this statement at a meeting of partners and his partners acquiesced. Later, when the transaction was completed by the sale of the Tide Water stock, a statement was prepared by the Comptroller of the firm showing the profits made by Lehman Brothers on the transaction, but no share of the profits was shown as attributable to Thomas and what otherwise would have been his share of the profits was allocated to the other members of the firm.

Plaintiff, a stockholder of Tide Water, through his attorney, sent a letter on June 29, 1955, pursuant to § 16(b), requesting Tide Water to institute suit against defendants Lehman Brothers and Thomas to recover profits realized in the above transaction. Further, plaintiff allowed more than sixty (60) days to elapse after making the demand, and when Tide Water failed to bring the suit plaintiff brought this action.

The law is now well settled that the mere fact that a partner in Lehman Brothers was a director of Tide Water, at the time that Lehman Brothers had this short swing transaction in the stock of Tide Water, is not sufficient to make the partnership liable for the profits thereon, and that Thomas could not be held liable for the profits realized by the other partners from the firm's short swing transactions. Rattner v. Lehman, 2 Cir., 1952, 193 F.2d 564, 565, 567. This precise question was passed upon in the Rattner decision. Judge L. Hand, in a concurring opinion in the case, said that he wished to say nothing as to "whether, if a firm deputed a partner to represent its interest as a director on the board, the other partners would not be liable." In this case there was no evidence that the firm of Lehman Brothers deputed Thomas to represent its interest as director on the board of Tide Water; in fact, the interests of Lehman Brothers in Tide Water at the time Thomas was elected to be a director were minimal.

In the Rattner case the partner of Lehman Brothers, who was a director of the corporation whose shares had been involved, realized $806.62 profit from the transaction and he paid this money over to the corporation. Thomas has paid nothing over to Tide Water. The Court dismissed the instant action as to Lehman Brothers on the authority of the Rattner decision, leaving open, however, the question as to whether Thomas individually might be liable for his share of

the profits on the short swing transaction.

The basic question which this Court must decide on this issue is whether an insider-partner *realizes* profits within the meaning of § 16(b), and is liable therefor, if he orally waives receipt of his share of the profits made by the partnership in "short swing" transactions of his corporation's securities.

■ Section 16(b) of the Securities Exchange Act of 1934 provides that all profits "realized" by an officer or director of a corporation from short term trading in its securities shall inure to the corporation. The purpose of the statute is to prevent, in short term trading in its securities, the possible unfair use of information which may have been obtained by an officer or director of the corporation by reason of his position. One of the purposes of § 16(b) was to prevent questionable transactions between insiders among themselves to the possible detriment of the minority shareholders and the public in general.

In Kogan v. Schulte, D.C.S.D.N.Y.1945, 61 F.Supp. 604, 608, 609, the Court stated:

> "We must not lose sight of the purposes of the statute. Judge Clark in Smolowe v. Delendo Corporation, supra [2 Cir., 136 F.2d 231, 148 A.L.R. 300], gives us a standard of interpretation which is applicable to the facts of the present case. He states (136 F.2d at page 239): 'The statute is broadly remedial. Cf. Wright v. Securities and Exchange Commission, 2 Cir., 112 F.2d 89. Recovery runs not to the stockholder, but to the corporation. We must suppose that the statute was intended to be thorough-going, to squeeze all possible profits out of stock transactions, and thus to establish a standard so high as to prevent any conflict between the selfish interest of a fiduciary officer, director, or stockholder and the faithful performance of his duty. Cf. Woods v. City Nat. Bank & Trust Co. of Chicago, 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820; In re Mountain States Power Co., 3 Cir., 118 F.2d 405; Otis & Co. v. Insurance Bldg. Corp., 1 Cir., 110 F.2d 333; In re Republic Gas Corp., D.C.S.D.N.Y., 35 F.Supp. 300.'"

In the instant case we have a situation where liability of Thomas would be clear if Thomas had taken his share of the profits. Did he, by oral waiver and transfer of his profits to other partners, insulate himself against liability under § 16(b)? The primary question is whether or not the defendant Thomas "realized" a profit within the meaning of the statute and is therefore liable. The legislative history is not very helpful on this problem. There is no guide to the meaning of the phrase "profit realized by him." Ordinarily there is no difficulty in ascertaining who realized the profit; it is the person for whose account the purchases and sales are made. Thus in the case of trading done for the account a partnership, one of whose members is an insider of the corporation whose stock was traded, the profit is realized and recovery allowed to the extent of the insider's proportionate partnership interest, rather than the full profit of the partnership. Cook and Feldman, Insider Trading Under the Securities Exchange Act, 66 Harv.L.Rev. 612, 628 (1953).

For the reasons set forth below, this Court feels that Thomas must still be held liable for what would have been his proportionate share of the partnership profits.

An insider-partner has at all times a beneficial interest in the purchase of all securities of the partnership and must report such ownership under § 16(a); and also must account for any profits from a sale thereof within six months. Rubin and Feldman, Statutory Inhibitions Upon Unfair Use of Corporate Information by Insiders, 95 U.Pa.L.Rev. 468, 488 (1947).

Thomas admittedly was a partner of Lehman Brothers when the Tide Water stock was acquired and when it was sold.

His capital was certainly at risk in the transaction; he could not, by any declaration of waiver, alter this situation. When the transaction ended with a profit to Lehman Brothers that profit, so far as Thomas was concerned, did not belong to him. Under § 16(b) it belonged to Tide Water. He could not, by a personal waiver of his profits, deprive Tide Water of what belonged to it. If his waiver was effective to transfer his share of the profits to his partners, then it is clear that by making such transfer of profits he was disposing of profits and to that extent he "realized" the profits.[2]

To permit a partner to waive the cash receipt of his partnership share and thereby escape liability is to create a situation which would frustrate the remedial purpose of § 16(b). It would permit avoidance of the statute by insider-partners of the same partnership but of different directorships by allowing them to interchange inside information and then waive the receipt of their share. This would result in each partner at varying times benefiting from this mutual waiver. An authority has ably stated what should be the rule:

"A partner should not be able to avoid the status of a beneficial owner by merely renouncing his interest in any profit from the transaction." Loss, Securities Regulation, 585 (1951).

The Court concludes that Thomas is accountable to Tide Water for his proportionate share of the profits of Lehman Brothers in the short swing transaction in Tide Water stock. The Court concludes that the profits of Lehman Brothers on this transaction were $98,686.77.[3] Since Thomas' share of the profits, under the partnership agreement, varied with the particular years in which the profit was realized and apparently did not depend on the profits from an individual transaction, but rather with respect to the entire profits of the partnership, the evidence is not sufficient to determine with accuracy the amount "realized" by Thomas. If the parties cannot agree upon this figure, it will be necessary to refer this item of damages to a special master to take and state the account.

Submit decree in accordance with this opinion.

2. For taxation purposes income has been held to be "realized" when it is made subject to the will and control of the taxpayer, and could be, except for his own action or inaction, reduced to actual possession. Loose v. United States, 8 Cir., 1934, 74 F.2d 147, 150. See also, Helvering v. Horst, 1940, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, wherein realization of income was defined as the power to procure payment to another.

Money, property or profits "realized" usually means brought into possession and is usually used in contrast to hope or anticipation, but it need not be cash in hand to be "realized." United States Smelting, Refining & Mining Co. v. Haynes, 1947, 111 Utah 172, 176 P.2d 622. See also, Lorillard v. Silver, 1867, 36 N.Y. 578, 579.

3. The cost of the shares to Lehman Brothers must be determined as the lowest price at which Tide Water common stock was selling at the time the common stock was converted into preferred stock, for this conversion constituted the purchase. Park & Tilford, Inc. v. Schulte, 2 Cir., 1947, 160 F.2d 984; Smolowe v. Delendo Corp., 2 Cir., 1943, 136 F.2d 231, 148 A.L.R. 300, certiorari denied, 1943, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446; Gratz v. Claughton, 2 Cir., 1951, 187 F.2d 46, certiorari denied, 1951, 341 U.S. 920, 71 S.Ct. 741, 95 L.Ed. 1353. The lowest price at which the stock was selling on the conversion date was $25.25 per share, which would mean that the aggregate purchase price for the 50,000 shares was $1,262,500. Within six months the converted shares were sold for an aggregate price of $1,361,186.77. The profit was therefore $98,686.77.