Jules EPSTEIN, a stockholder of United States Glass & Chemical Corporation, suing in behalf of himself and all of the stockholders similarly situated and in behalf of and in the right of United States Glass & Chemical Corporation, Plaintiff,

v.

David L. SHINDLER, Joseph Abrams, Charles Gordon, John Gold, William Freiman, Alfred W. Owen, Harold Antin, Bostwick Westbury Corp., Superior Minerals Company, Jack Yetman, Albert Hayutin, Lester Maslin, Leonard James Nationwide Holdings, Inc., Standard Development Corporation and other persons whose names are presently not known to the plaintiff, jointly and severally, Defendants.

United States District Court
S. D. New York.
Nov. 4, 1960.

Landis, Feldman, Reilly & Akers, New York City, for plaintiff.

Weisman, Celler, Allan, Spett & Sheinberg, New York City, for defendant William Freiman.

IRVING R. KAUFMAN, District Judge.

Plaintiff, a stockholder in United States Glass & Chemical Corporation, brought this action to recover "short-swing" profits under Section 16(b) of the Securities Exchange Act of 1934 [15 U.S.C.A. 78p(b)],[1] against the individual and corporate defendants, allegedly directors, officers and principal shareholders of the corporation. The corporation is not a party to the suit. Defendant Freiman asserted two counterclaims for monies allegedly due him for past services rendered to the corporation. By the instant motion, plaintiff seeks to have these counterclaims dismissed.

Defendant's counterclaims were asserted pursuant to Rule 13(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., which provides that "A pleading may state as a counterclaim any claim *against an opposing party* not arising out of the transaction or occurrence that is the subject of the opposing party's claim." (Emphasis supplied). It is not contended by the defendant that his counterclaims are grounded on the same transactions which form the basis for plaintiff's claim. Plaintiff argues here that, since the corporation is not a party to the action, it is not an "opposing party" within the meaning of Rule 13(b), and thus counterclaims against it cannot be asserted. Defendant, in turn, contends that the corporation, although not a nominal party, is the real party in interest here, since any recovery inures to it. Thus, he argues that it would be inequitable to require him to account to the corporation without also allowing him to assert any claims he may have against it.

The question raised appears to be a novel one. In the somewhat analogous area of shareholders' derivative suits, Judge Weinfeld held, in a different context, that the corporation to whose benefit any recovery would eventually run was an "interested party" rather than an "opposing party" under Rule 13. Cravatts v. Klozo Fastener Corp., D.C.S.D. N.Y.1953, 15 F.R.D. 12. However, in this case the question presented was whether the corporation, a nominal defendant, could interpose a counterclaim against the plaintiff shareholder. Thus, its applicability here is minimal. But, I do not believe that the result in the present case should hinge upon any literal reading of Rule 13(b). This rule should be read in light of the particular problem to be solved. Therefore, the determination should be based upon an evaluation of the purpose of the Securities Exchange Act of 1934, and, more particularly, of Section 16(b).

1. "For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months, unless such security was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months. Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized. This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security involved, or any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection."

■ The defendant can derive some support from the literal wording of the statute. Section 16(b) indicates that "Any profit * * * shall inure to and be recoverable by the issuer * * *. Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer *in the name and in behalf of the issuer* * * *". (Emphasis supplied). But despite the fact that all recovery goes to the corporation, it is clear that the statutory policy of the section looks toward protecting the "outside" shareholder, and ultimately, the entire investing public. This has been pointed out many times by the courts. Thus, in Benisch v. Cameron, D.C.S.D.N.Y.1948, 81 F. Supp. 882, 884, the court said "Although the right of action created by Section 16(b) is somewhat akin to the ordinary stockholder's derivative suit, it is plain from the reasons set forth in Section 2 of the Act, 15 U.S.C.A. § 78b, and in the preamble to Section 16(b), that it was primarily intended as an instrument of a statutory policy of which the general public is the ultimate beneficiary. Congress did not intend procedural restrictions to hamper such policy." In Smolowe v. Delendo Corp., 2 Cir., 136 F.2d 231, 148 A.L.R. 300, certiorari denied 1943, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446, Judge Clark emphasized that "The primary purpose of the Securities Exchange Act—as the declaration of policy in § 2, 15 U.S.C.A. § 78b, makes plain—was to insure a fair and honest market, that is, one which would reflect an evaluation of securities in the light of all available and pertinent data." 136 F.2d at page 235. And, more recently, in

Blau v. Lehman, D.C.S.D.N.Y.1959, 173 F.Supp. 590, 594, Judge Dawson commented that "One of the purposes of § 16(b) was to prevent questionable transactions between insiders among themselves to the possible detriment of the minority shareholders and the public in general." See also Adler v. Klawans, 2 Cir., 1959, 267 F.2d 840.

It is evident that Section 16(b) is invested with a public character; that enforcement of its provisions is in the interest of the public in general, as well as of the issuing corporation. Thus, it is certainly in the public interest that shareholders not be discouraged to bring actions to enforce its policies. At present, there is no great incentive for shareholders to have recourse to this section. As Judge Palmieri pointed out in Fistel v. Christman, D.C.S.D.N.Y.1955, 133 F. Supp. 300, 304, "the statute does not offer any hope of reward to the security holder who brings an action under section 16(b) other than the satisfaction derived from a good deed well done and the extent to which the value of his interest in the corporation might be increased by reason of a recovery. * * * most investors have neither the means or knowledge needed to engage in an investigation for the purpose of determining if the grounds for an action under section 16(b) exist * * *."

■■ I do not think it would be in accord with the policy of the statute to further deter these shareholders by confronting them with the possibility of having to defend substantial claims against the corporation based on completely unrelated conduct.[2] I am mindful of the policy underlying Rule 13, and the Federal Rules of Civil Procedure in general,

---

2. As the courts have pointed out, frequently the sole incentive for instituting actions under Section 16(b) is the prospect of the recovery of attorney's fees. But even if attorneys are in fact the prime movers in the enforcement of this section, it is certainly in the interest of effectuating statutory policy not to discourage these actions from being brought, regardless of motivation. If the attorney is faced with the possibility of becoming involved in complex and lengthy litigation, far beyond that which he originally expected, he may well advise prospective plaintiffs to forego the institution of suit.

of avoiding multiplicity of actions and facilitating the expeditious disposition of controversies.[3] But this principle like any other, is a rule of reason, and should not be extended so as to thwart important substantive policies such as are present in the instant case. Thus, I hold that, at least in cases in which the counterclaim sought to be asserted is a "permissive" one, under Rule 13(b), it cannot be maintained. So ordered.

3. It does not seem that the policy of avoiding delay would be facilitated by allowing the counterclaims here to be maintained. The corporation has not been made a party here, and it does not appear that the corporation's attorneys are presently representing the plaintiff. Presumably, therefore, the corporation and its attorneys would have to enter the proceedings for the first time in order to undertake the defense of the counterclaims. Since this is exactly what would happen if a new action were required to be brought, there would be no appreciable saving of time resulting from allowing the issues presented by the counterclaims to be litigated in the instant action. Moreover, the counterclaim issues are likely to require substantial discovery proceedings. This would delay further the determination of plaintiff's claim, a consequence which is surely contrary to the policy of 16(b).