MOLYBDENUM CORPORATION OF AMERICA, Plaintiff,

v.

INTERNATIONAL MINING CORPORATION and South American Gold & Platinum Company, Defendants.

United States District Court
S. D. New York.

April 25, 1963.

**416**

Kaufman, Taylor & Kimmel, for Robert Cummings, plaintiff-intervenor.

Strook, Stroock & Lavan, New York City, for plaintiff.

Royall, Koegel & Rogers, New York City, for International Mining.

EDELSTEIN, District Judge.

Robert Cummings, a minority stockholder of plaintiff corporation, has moved pursuant to Fed.R.Civ.P. 24(a) [1] and Section 16(b) of the Securities and Exchange Act of 1934, 15 U.S.C.A. § 78 p(b) [2] to intervene as a party plaintiff in the above-entitled action. Plaintiff

---

1. Fed.R.Civ.P. Rule 24(a) provides:
   "Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene or (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action; or (3) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property which is in the custody or subject to the control or disposition of the court or an officer thereof."

2. 15 U.S.C.A. § 78p(b) provides:
   "(b) For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any

equity security of such issuer (other than an exempted security) within any period of less than six months, unless such security was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction ,of holding the security purchased or of not repurchasing the security sold for a period exceeding six months. Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized. This subsection shall not be construed to cover any transaction where such beneficial

instituted this action to recover short-swing profits allegedly realized by the defendants in transactions in plaintiff's common stock and stock purchase warrants. Cummings bases his intervention application under Section 16(b) on the ground that plaintiff may be dominated and controlled by the defendants, and that plaintiff may fail diligently to prosecute the action. He seeks intervention under Fed.R.Civ.P. 24(a) on the basis that the interests of the minority shareholders are, or may be, inadequately represented unless intervention is permitted. See Fed.R.Civ.P. 24(a).

Cummings alleges that on September 21, 1962, his attorneys sent a letter on his behalf to plaintiff requesting that plaintiff take appropriate action in order to recover the short-swing profits. Plaintiff commenced this action on November 14, 1962, four days prior to the conclusion of the sixty-day statutory period after which Cummings himself would have been permitted to sue on behalf of plaintiff. Although plaintiff maintains that this action was instituted as a result of its own spadework and diligence in uncovering the alleged short-swing transactions, Cummings contends that his notice was the impetus which motivated the commencement of suit.

Cummings' contention that the action will not be diligently prosecuted is based on the fact that the defendant corporations have substantial representation on plaintiff's Board of Directors. The close relationship between plaintiff and defendants, Cummings contends, renders it unlikely that plaintiff will assume a true adversary attitude towards defendants in this litigation. And Cummings points out that the defendants' control of plaintiff—which Cummings fears will prevent plaintiff from aggressively prosecuting the action—has materially increased since Cummings wrote to plaintiff corporation. On September 28, 1962,

Mr. Joseph C. Bennett, an Assistant Vice-President of both of the defendants, and Mr. Herbert F. Ditchburn, a consulting mining engineer, whom defendants admit has had some connection with them, were elected to plaintiff's Board of Directors. On November 16, 1962, Mr. Lewis B. Harder, who had been elected a Director of plaintiff on June 26, 1962, was elected Chairman of the Board of plaintiff. Mr. Harder also is Chairman of the Board of defendant, International Mining Corporation, and is a Director and President of defendant, South American Gold and Platinum Company, which controls defendant International Mining Company and owns a majority of International's stock. Thus, of the eleven members of plaintiff's Board of Directors, three, including the Chairman of the Board, are connected with defendants.

Cummings also alleges that the directors of plaintiff who are unaffiliated with defendants own a total of approximately 60,000 shares of plaintiff's common stock while the defendants own approximately 210,000 shares of a total of 1,688,296 shares outstanding and eligible to vote at the April 1962 stockholders meeting. In this connection Cummings adds that since several directors of plaintiff receive substantial salaries, stock options, bonuses, and the promise of retirement benefits by virtue of their positions as officers of plaintiff, it is not likely, he alleges, that these men would risk the loss of these perquisites by aggressively prosecuting this action which, if successful, would impose a substantial liability upon plaintiff's major stockholders. The prospective intervenor alleges that besides the necessity for aggressive representation in all cases of this kind, there are also complex questions regarding the measure of damages in this particular case which require devoted and uncompromised

owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security involved, or any transaction or transactions which the

Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection."

representation. Moreover, Cummings points out that his intervention would allow the introduction of a cause of action not set forth in the complaint. This cause of action, based upon the "deputization theory" of Blau v. Lehman, 368 U.S. 403, 82 S.Ct. 451, 7 L.Ed.2d 403 (1962), encompasses short-term transactions engaged in by defendants at a time when their ownership was somewhat short of the required 10% of a class of plaintiff's equity securities. Cummings asserts that the deputization theory has peculiar applicability to the instant facts and should, therefore, be asserted.

In response to Cummings' allegations plaintiff denies the contention that the letter from Cummings' attorneys prompted the instant action. Mr. Williams R. Kuntz, plaintiff's Executive Vice President, states in an affidavit that he became aware of the defendants' transactions in the securities of plaintiff on September 11, 1962, and promptly reported them to Mr. Milton N. Scofield, a partner in the law firm which represents plaintiff and which has brought this action. This conversation preceded the receipt by plaintiff of the letter from Cummings' attorneys, dated September 21, 1962. Kuntz further points out that upon the advice of counsel, plaintiff's Board of Directors, at a meeting on October 26, 1962, unanimously authorized the institution of this action if defendants failed to account for the 16(b) profits subsequent to plaintiff's demand. Harder and Bennett, two of the three directors of plaintiff who are also connected with defendant, abstained from this vote. At this meeting, the Board appointed a committee of three directors, Messrs. Pierson, Prior and Doriot, all of whom are not employees of the plaintiff and are not affiliated with either defendant. The committee was to supervise the prosecution of the action and was to have the full powers of the Board between Board meetings with respect to this suit. A demand upon defendant for payment of the alleged 16(b) profits was made on October 30, 1962. This demand was rejected and on November 14, 1962, plaintiff brought suit. Scofield states in his affidavit that on November 15, 1962, the Securities and Exchange Commission was invited to participate in this action as *amicus curiae*, but the Commission has not appeared.

Plaintiff has attempted to minimize the fact that Mr. Lewis B. Harder, the Chairman of one of the defendants, and President of the other, was elected Chairman of plaintiff's Board of Directors just two days after the suit was brought. Plaintiff points out that immediately after Harder's election all the powers and duties of the Chairman, except the duty to preside at all meetings of stockholders and of the Board, were transferred to the President. As for defendants' stock ownership and control over plaintiff, Kuntz admits that as of December 14, 1962, defendants owned 12.4 percent of plaintiff's outstanding common stock. Kennecott Copper Corporation owned 7 percent of the stock, and plaintiff's directors and officers as a group, exclusive of Harder, Bennett and Ditchburn, owned 3.7 percent. Plaintiff believes that the balance of the stock is publicly held.

Plaintiff does not agree that the proposed additional count based upon Blau v. Lehman, supra, would materially increase the potential recovery. Plaintiff's attorneys state that they had considered including a count based upon Blau v. Lehman but decided, for tactical reasons, to postpone using it until after the defendants had answered. Plaintiff states that it intended to use Blau v. Lehman in opposition to one of the principal defenses upon which it expected defendants to rely. Plaintiff points to Cummings' attempt to assert Blau v. Lehman in the complaint as evidence of the detrimental effects of interference by an outsider with the conduct of the litigation.

Although Section 16(b) has been called the most "cordially disliked provision in all these statutes from the point

of view of those whom it affects," 2 Loss, Securities Regulation, 1087 (2d ed. 1961), courts have given the statute a consistently liberal interpretation in order to further the salutary purpose of curbing insider abuse. Ellerin v. Massachusetts Mutual Life Insurance Co., 270 F.2d 259, 263 (2d Cir., 1959); Smolowe v. Delendo Corp., 136 F.2d 231, 239, 148 A.L.R. 300 (2d Cir., 1943), cert. denied, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446 (1943). In the furtherance of the statutory purpose "and to guard against possible conflicting loyalties, courts have liberally permitted intervention by security holders." Silverman v. Re, 194 F.Supp. 540, 542 (S.D. N.Y.1961). See Park & Tilford v. Schulte, 160 F.2d 984 (2d Cir., 1947), cert. denied, 332 U.S. 761, 68 S.Ct. 64, 92 L.Ed. 347 (1947); Ferraiolo v. Newman, 250 F.2d 342 (6th Cir., 1958), cert. denied, 359 U.S. 927, 79 S.Ct. 606, 3 L.Ed.2d 629 (1959); Pellegrino v. Nesbit, 203 F.2d 463, 37 A.L.R.2d 1296 (9th Cir., 1953); Twentieth Century-Fox Film Corp. v. Jenkins, 7 F.R.D. 197 (S. D.N.Y.1947); Berkey & Gay Furniture Co. v. Wigmore, 5 S.E.C. Jud.Dec. 307 (S.D.N.Y.1947); Cook & Feldman, Insider Trading Under the Securities Exchange Act, 66 Harv.L.Rev. 385, 414 (1953).

"Since diligence, depending largely upon the mental state of the corporate management and its counsel, is difficult of proof, the courts have freely granted to security holders the right to intervene. Both the section itself [§ 16 (b)] and Rule 24(a) 2 of the Federal Rules of Civil Procedure contemplate a liberal grant of this right." Cook and Feldman, supra at 414. Although these commentators have given currency to the view that Section 16(b), standing alone, gives a security holder an absolute right to intervene without the necessity of satisfying the requirements of Rule 24(a) (2), Fed.R.Civ.P. Cook and Feld-

man, supra at 414–415, the courts have not yet extended the liberal policy of intervention to reach that result.

This liberal policy of encouraging the vigorous prosecution of insiders' abuses is illustrated by the attitude of the court in Park & Tilford v. Schulte, supra. In Park & Tilford the defendants were three brothers who were trustees of a trust created by their father, a former president and chairman of plaintiff's board of directors. The defendants played dominant roles in the affairs of the plaintiff corporation. One of the defendants was a director of plaintiff and defendants owned a majority of plaintiff's common stock at the time of the transactions. The Court of Appeals reversed an order of the District Court denying a minority shareholder the right to intervene and stated that "Under the circumstances here disclosed, the interests represented by defendants and their father were so dominant in the affairs of plaintiff that the District Court should have allowed stockholder representation *to guard against even the appearance of any concerted action."* Id. 160 F.2d at 988. [emphasis supplied.] The plaintiff's attempt to draw a factual distinction between the facts of the instant case and the facts in Park & Tilford is not persuasive. See also Berkey & Gay Furniture Co. v. Wigmore, supra.

The justification for assuming a liberal posture toward intervention by security holders has been summarized in the following manner: "The many opportunities for less than vigorous prosecution in the course of litigation, the amicable nature of many section 16(b) claims by a corporation against its own officers and directors, the possibility of subtle conflicts of interest in such cases, and the public enforcement of the sanction all require free intervention by minority interests." Cook & Feldman, Insider Trading Under the Securities Act, supra at 415.[3]

---

3. The unreported opinion in Lewis v. Rosenberg, Civ. No. 120–12, S.D.N.Y. April 11, 1958, relied on by plaintiff is clearly inapposite. Lewis involved

■■ Despite the fact that on the basis of the affidavits presented it appears that this action was instituted on plaintiff's own initiative rather than as a result of the letter from Cummings' attorneys, the facts indicate, nevertheless, that intervention should be permitted. The fact that defendants own the largest single block of plaintiff's common stock and that two of the members of plaintiff's Board of Directors, including its Chairman, are also members of defendants' board raises the spectre of subtle conflicts of interest between these parties who may be friendly antagonists. The possibility that "[d]omination may spring as readily from subtle or unexercised power as from arbitrary imposition of command." is not unreal. North American Co. v. S. E. C., 327 U.S. 686, 693, 66 S.Ct. 785, 790, 90 L.Ed. 945 (1946). The close association of plaintiff with defendants may result in less than vigorous prosecution and indicates that the representation of plaintiff's stockholders "may be inadequate" within the meaning of Rule 24(a) (2). Parke & Tilford v. Schulte, supra; Kozak v. Wells, 278 F.2d 104, 110, 84 A.L.R.2d 1400 (8th Cir., 1960). Moreover, Cummings' proposed additional cause of action broadens the scope of plaintiff's complaint by seeking relief for any purchases and sales effected when defendants did not own in excess of ten percent of plaintiff's stock. And, if intervention is permitted the action becomes a class action and plaintiff and its stockholders receive additional protection against any unfavorable compromise of the action which may be proposed since a class action cannot be dismissed or compromised without court approval. Rule 23(c), Fed.R.Civ.P.[4]

■ Plaintiff contends that Cummings' intervention would be detrimental to plaintiff's interest in that it would result in a division of efforts and authority in the prosecution of the action. However, any possible inconvenience resulting from intervention must yield before the statutory mandate permitting intervention as of right where representation of the applicant's interest may be inadequate. Moreover, pursuant to court rule, S.D.N.Y.Civ.R. 11, the amount of attorney's fees that will be allowed in the event of recovery is subject to approval by this court.[5]

Therefore, this court finds that the interests of plaintiff and its stockholders may not be adequately represented by those who seek to intervene, at least where allowance of intervention will not introduce extraneous issues into the suit, threaten to disrupt the action, or run counter to the policy of the statute under which the action is brought." Int'l. Mortgage & Inv. Corp. v. Von Clemm, 301 F.2d 857 (2d Cir., 1962).

a suit by a stockholder against the corporation and individual insiders—not a suit by the corporation against the corporate insiders as in the instant case. Moreover, the suit in Lewis was in the terminal stage of the litigation and was in the process of settlement and compromise at the time when the stockholder sought to intervene.

4. The plaintiff's argument that a stockholder has no interest in the corporate assets and in a corporation's cause of action and is therefore not bound by the judgment in the corporation's suit, See Fed.R.Civ.P. 24(a) (2), is without merit. Since a stockholder's suit would have to be brought in the name and on behalf of the corporation it is difficult to perceive how a judgment in the corporation's suit would not adversely affect a stockholder's attempt to relitigate the identical claim in behalf of the corporation. "It is enough under Rule 24(a) (2) that an adverse judgment would seriously prejudice

5. Rule 11—Fees in Stockholder and Class Actions

"Fees for attorneys or others shall not be paid upon the recovery or compromise in a derivative or class action on behalf of a corporation or class except as allowed by the court after a hearing upon such notice as the court may direct. The notice shall include a statement of the names and addresses of the applicants for such fees and the amounts requested respectively. The court, in its discretion, may direct that the notice also be given the New York Regional Office of the Securities and Exchange Commission. Where the court directs notice of a hear-

the existing parties to the action, and that the interests of the plaintiff corporation and its stockholders will best be served if Cummings is permitted to intervene.

Accordingly, Cummings' motion to intervene in this action as a party plaintiff is granted and a copy of the complaint attached to his moving affidavit may be served upon the parties herein. So ordered.

Settle order on ten days' notice.

ing upon a proposed voluntary dismissal or settlement of a derivative or class action, the above information as to the

applications shall be included in the notice."