**MIRACLE MART, INC., Plaintiff,**

v.

**Jacob E. MARGOLIS, Defendant.**

**Civ. A. No. 68–659.**

United States District Court
D. Massachusetts.

Feb. 19, 1969.

Robert W. Meserve, John R. Hally, Nutter, McClennen & Fish, Boston, Mass., for plaintiff.

Note: This is being supplied to counsel, but not being made a part of the cases involved because counsel have indicated their intention to comply. However, it will be distributed for the information of the members of the Bar without identifying the cases.

Henry Gesmer, Lawrence M. Levy, Brown, Rudnick, Freed & Gesmer, Boston, Mass., for defendant.

Lawrence H. Adler, Michaels & Adler, Boston, Mass., Donald I. Laventhall, New York City, for intervenor.

## MEMORANDUM AND ACTION ON MOTION TO INTERVENE

JULIAN, District Judge.

This case is before the Court upon the motion for leave to intervene as a party plaintiff filed by Dick Sobel, a minority shareholder of plaintiff corporation. Both plaintiff and defendant oppose the granting of the motion. Following a hearing on October 30, 1968, all parties were granted additional time within which to file supplemental memoranda and affidavits.

The underlying action was brought by the plaintiff corporation under sections 16(b) and 27 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78p(b) and 78aa, to recover "insider" profits allegedly received by defendant as the result of his purchase and subsequent resale within six months of common stock of plaintiff corporation in violation of the Act.

It is alleged in the complaint that the plaintiff, Miracle Mart, Inc. (hereinafter "Miracle Mart"), is a Delaware corporation having its principal place of business in New York; and that the common stock of Miracle Mart was at all times relevant hereto an equity security registered with the Securities and Exchange Commission pursuant to 15 U.S.C. § 78 (l).

The complaint alleges that the defendant, Jacob E. Margolis (hereinafter "Margolis"), is a resident of Massachusetts and that he was a director of Miracle Mart during the period from on or about August 17, 1967, through on or about October 16, 1967.

The complaint alleges that on or about August 17, 1967, defendant Margolis, who then owned more than 10 per cent of the outstanding shares of common stock in Miracle Mart, purchased an additional 266,349 shares at $2.38 per share. The complaint further alleges that on the same day Margolis and other stockholders of Miracle Mart, together owning 80 per cent of the outstanding shares of Miracle's common stock, entered into an agreement to sell all those shares to a third party, King's Department Stores, Inc. (hereinafter "King's"), for a purchase price that was to be determined by a formula contained in the sale agreement.

The complaint also alleges that one condition of the agreement with King's provided that Margolis and other directors and stockholders of Miracle Mart would use their best efforts to cause Miracle Mart to distribute to Miracle Mart's stockholders on a share-for-share basis all shares of a wholly owned subsidiary corporation, H. & W. Cantor Enterprises, Inc. (hereinafter "Cantor"). It is further alleged that Margolis and the other directors and stockholders of Miracle Mart did, on or about October 16, 1967, cause Miracle Mart to distribute as a dividend to its stockholders, including Margolis, on a share-for-share basis, all the shares of stock of Cantor held by Miracle Mart, and that Margolis received 266,349 shares of Cantor as a result of his ownership of the common stock of Miracle Mart that he acquired on August 17, 1967. It is alleged that thereafter on the same date, October 16, 1967, the sale to King's by Margolis and others under the August 17 agreement was consummated. The complaint alleges that the price per share under the formula in the sale agreement, although not yet finally determined, is estimated not to exceed $1.20 per share. Adequate funds to be used in payment of that purchase price are alleged to have been placed in escrow on October 16, 1967.

Defendant Margolis in his answer admits all of the foregoing to be true except the allegation that he was a director of Miracle Mart.

The gist of Miracle Mart's action against Margolis is the contention that, as a result of the foregoing transactions, Margolis in return for the sale of his stock to King's received not only Cantor stock from Miracle Mart but also money from King's, thus realizing a profit on the resale of the 266,349 shares which he had purchased in August. Because six months had not passed between the purchase and resale of those shares, Miracle Mart seeks under section 16(b) of the Act to recover the profits which Margolis received.

The present motion for leave to intervene was filed on September 18, 1968, by Dick Sobel (hereinafter "applicant"), a minority stockholder owning 50 shares of common stock in Miracle Mart, pursuant to Federal Rule of Civil Procedure 24(a) (2).[1] The applicant also relies upon that portion of Section 16(b) itself, 15 U.S.C. § 78p(b), which provides:

> "Suit to recover such profit may be instituted * * * by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request *or shall fail diligently to prosecute the same thereafter*; * * *." (Emphasis added)

The applicant contends that the plaintiff, Miracle Mart, is unlikely to prosecute the suit diligently because its parent corporation, King's, which owns 80 per cent of the stock of Miracle Mart, was a party to and profited from the very transactions in which the defendant, a former director of plaintiff, realized his illegal profits. In support of this contention, the applicant relies upon information contained in the affidavit of defense counsel, not denied by plaintiff,[2] to the effect:

(a) that defendant acquired the money with which he purchased the 266,349 shares of Miracle Mart stock in August, 1967, as the result of a loan of $782,000 from the First National Bank of Boston on August 21, 1967:

(b) that King's guaranteed Margolis' note in that amount to the First National Bank, and, in addition, agreed to reimburse him for 632/782 (or about 80 per cent) of each interest installment becoming due on the note;

(c) that on October 16, 1967 (the date defendant sold all of his Miracle Mart stock to King's), defendant repaid a portion ($520,584.07) of the principal due on the note by means of a check forwarded to King's attorney, Alan R. Trustman, and thence to the bank, said check representing the net proceeds due Margolis out of the initial payment received from King's on account of the sale price of the stock of Miracle Mart;

(d) that subsequently King's, as guarantor, paid off the balance of the note ($261,415.93).

The applicant contends that the foregoing information shows that King's stood to benefit from Margolis' acquisition of additional Miracle Mart stock in August, 1967, in that King's could then purchase that stock, as well, from the defendant under the stock purchase agreement. Since it is that same August, 1967, purchase of additional Miracle Mart stock by Margolis, underwritten by King's guarantee of the bank note, which constitutes the purchase portion of the purchase and resale claimed in this

---

1. Rule 24(a) (2), Fed.R.Civ.Proc., provides:

   "(a) *Intervention of Right.* Upon timely application anyone shall be permitted to intervene in an action: * * * (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless . the applicant's interest is adequately represented by existing parties."

2. In its complaint plaintiff does dispute one statement contained in the affidavit, namely, defense counsel's denial that defendant ever was a director of Miracle Mart.

action to have been illegal, the applicant argues that King's is unlikely now to permit its subsidiary, the plaintiff, to challenge the legitimacy of Margolis' participation in the transaction with the necessary diligence, vigor and determination.

The applicant's argument also suggests that King's is likely to be less than enthusiastic about permitting its subsidiary to attack with true adversary zeal the legality of a purchase and resale where King's underwrote the purchase and was itself the purchaser in the resale.[3]

The applicant also relies upon the fact that Miracle Mart waited nine months after the October 1967 closing under the stock purchase agreement before instituting this action against Margolis. He contends that the suit was finally brought only after and as a result of his (the applicant's) written demand of June 10, 1968,[4] under Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b). The applicant argues that this delay indicates a lack of diligence, since Miracle Mart—represented here by the same law firm which negotiated the stock purchase agreement on behalf of King's and represented King's at the closing— had by inference full knowledge of the facts underlying the stock purchase agreement, including the amount realized by Margolis.

In support of his contention that plaintiff brought suit belatedly and reluctantly, the applicant points to plaintiff's response to the applicant's formal request that suit be brought, citing the letter sent to him on June 26, 1968, by Miracle Mart's attorney, Alan R. Trustman. The text of the letter is set out in the margin.[5] The applicant emphasizes the letter's failure, in calculating Margolis' proceeds from the stock purchase agreement, to consider the value of the Cantor stock which Margolis had received as part of the bargain. This omission, the applicant argues, was in-

---

3. In addition to the fact that King's now owns 80 percent of Miracle Mart's common stock, the record also reveals that King's and Miracle Mart share the same Massachusetts business address, have the same counsel, and have at least one common officer (Benjamin M. Fiegar is Treasurer of both corporations).

4. Exhibit B attached to applicant's affidavit in support of motion to intervene.

5. "June 26, 1968
"Donald I. Laventhall, Esq.
Laventhall & Zicklin
521 Fifth Avenue
New York, New York 10017
"Dear Mr. Laventhall:
    "This office is counsel for Miracle Mart, Inc. who have referred to us your June 10 letter.
    "We are puzzled by your assertion that Mr. Margolis realized a $330,000 profit. On the contrary, we understand that Mr. Margolis lost a great deal of money on the purchase and resale, and if Mr. Margolis made a profit on the transaction, this would be of great interest to us.
    "Passing without comment for the moment all questions as to the applicability of Section 16(b), as to whether

or not 266,349 is the right number of shares, and as to the proper method of computing Mr. Margolis' gain or loss on the transactions, I can advise you that the purchase price paid for the Miracle Mart shares has not yet been finally determined, but will in no event exceed $1.20 per share, and may turn out to be substantially less.
    "That means that the total price paid for 266,349 shares would be no more than $320,000. While I am not personally familiar with the details of the transaction in which Mr. Margolis purchased the shares, based on my limited familiarity with the gentleman from whom Mr. Margolis purchased the shares and his behavior during the first two weeks of August, I would be shocked to learn that he sold the shares to Mr. Margolis for any price which was not substantially greater than $1.20 per share.
    "In fact, if any of the various sellers had realized on August 16 that the price they would ultimately receive would be no more than $1.20 per share, and possibly less, I doubt that they would have consummated the sale.
                Very truly yours,
                /s/ Alan R. Trustman"

genuous at best and evidences a reluctance to prosecute this action diligently. Finally, the applicant notes that within a week after his attorneys in a reply letter revealed that the applicant was aware of this omission, plaintiff brought this suit.

The Court notes what appear to be inconsistencies between attorney Trustman's letter to counsel for the applicant and his affidavit filed in opposition to this motion to intervene. In the letter Mr. Trustman makes this statement:

"We are puzzled by your assertion that Mr. Margolis realized a $330,000 profit. On the contrary, we understand that Mr. Margolis lost a great deal of money on the purchase and resale, and if Mr. Margolis made a profit on the transaction, this would be of great interest to us."

Yet in paragraph 3 of his affidavit filed October 10, 1968, Mr. Trustman states that at the time he received the applicant's request that suit be brought, his law firm

"already had the matter under investigation and had already advised the plaintiff that we would, in all probability, ultimately recommend suit against Mr. Margolis."

In his letter attorney Trustman states that he was not familiar with the details of the transaction in which Margolis *purchased* the shares.[6] Yet in paragraph 5 of the affidavit he states that the reason suit had not previously been commenced was that Miracle Mart was not in possession of certain facts relating to Margolis' *resale* of the stock.

Finally, even as to the details of the resale said to have been lacking, namely, the final price to be paid to Margolis under the stock purchase agreement formula and the value of the Cantor stock distributed to Margolis, the affidavit states that Miracle Mart still does not possess the requisite information. If that is so, then it is difficult to imagine what changed circumstance, except the applicant's prodding, led Miracle Mart to bring this action when it did.

■ It is not necessary that the applicant show conclusively that the plaintiff corporation has been less than diligent. As the former Chairman and the former Special Counsel of the Securities and Exchange Commission observed:

"Since diligence, depending largely upon the mental state of the corporate management and its counsel, is difficult of proof, the courts have freely granted to security holders the right to intervene. Both [Section 16(b)] itself and Rule 24(a) (2) of the Federal Rules of Civil Procedure contemplate a liberal grant of this right." Cook & Feldman, Insider Trading Under the Securities Exchange Act, 66 Harv.L.Rev. 385, 414 (1953).

The prevailing rule of granting intervention liberally was repeated in Molybdenum Corporation of America v. International Mining Corporation, 1963 S.D.N.Y., 32 F.R.D. 415, 418–419:

"Although Section 16(b) has been called the most 'cordially disliked provision in all these statutes from the point of view of those whom it affects,' 2 Loss, Securities Regulation, 1087 (2d ed. 1961), courts have given the statute a consistently liberal interpretation in order to further the salutary purpose of curbing insider abuse. [Citations omitted.] In the furtherance of the statuory purpose 'and to guard against possible conflicting loyalties, courts have liberally permitted intervention by security holders.' [authorities cited]."

See Pellegrino v. Nesbit, 1953, 9 Cir., 203 F.2d 463, 467, 37 A.L.R.2d 1296; *cf.* Nedick's Stores, Inc. v. Genis, 1963, S.D.N.Y., 34 F.R.D. 235, 237; Park &

---

6. As noted previously, defense counsel's affidavit states that Margolis' repayment of $520,584.07 of the principal of the bank loan which financed that purchase was tendered to attorney Trustman before being forwarded to the bank.

Tilford v. Schulte, 1947, 2 Cir., 160 F.2d 984, 988.

In paragraph 5 of its "Supplemental Memorandum in Opposition to Motion for Leave to Intervene" the plaintiff states:

> "The attorneys for the plaintiff and for the applicant would be forced into litigation together thereby dividing control and responsibility for the case which never proves helpful to any litigant, and under circumstances which would make it very difficult to collaborate."

Intervention, however, nearly always requires attorneys for the plaintiff and attorneys for the intervenor to cooperate in the prosecution of the case. The Court is not aware of "the circumstances which would make it very difficult" for the attorneys for the plaintiff in this case and for the attorneys for the applicant to collaborate.

Whatever possible inconvenience might flow from the participation of the intervenor's counsel would probably be minor and must yield to the salutary policy of permitting intervention. Molybdenum Corporation of America v. International Mining Corporation, *supra*, 32 F.R.D. at 420.

Allocation of counsel fees will depend upon the relative contribution of each to the proceedings and would be subject to approval by this Court. Cook & Feldman, *supra*, at 415, n. 121; cf. Molybdenum Corporation of America v. International Mining Corporation, *supra*, 32 F.R.D. at 420.

The applicant has the necessary legal standing to intervene. In the circumstances of this case representation of the applicant's interest by the plaintiff may prove inadequate. The Court is of the opinion that the applicant should be permitted to intervene in order that he may safeguard his interest as a minority shareholder of the plaintiff.

The applicant's motion to intervene is granted.