**PHARMACEUTICAL RESEARCH AND MANUFACTURERS OF AMERICA, Plaintiff**

**v.**

**COMMISSIONER, MAINE DEPARTMENT OF HUMAN SERVICES, et al., Defendants**

**No. CIV 00–157–B–H.**

United States District Court, D. Maine.

June 8, 2001.

Bruce C. Gerrity, Ann R. Robinson, Preti, Flaherty, Beliveau, Pachios & Haley, LLC, Augusta, Allen S. Rugg, Daniel M. Price, Powell, Goldstein, Frazer & Murphy, Wash-

ington, DC, Kathleen M. Sullivan, Stanford Law School, Stanford, CA, for Pharmaceutical Research and Manufacturers of America, plaintiffs.

Paul Stern, Andrew S. Hagler, Assistant Attorney Generals, Augusta, Commissioner, Maine Department of Human Services, Attorney General, Maine, defendants.

## ORDER ON EDWIN D. SCHINDLER'S MOTION TO INTERVENE

HORNBY, Chief Judge.

Edwin D. Schindler owns stock in three companies that are members of Pharmaceutical Research and Manufacturers of America (PhRMA). He wants to intervene in the lawsuit PhRMA has brought against the Commissioner of the Maine Department of Human Services challenging the lawfulness of Maine's prescription drug pricing statutes. Schindler wants to make an argument that PhRMA does not: specifically, that federal patent law preempts the Maine statutes. I DENY Schindler's motion to intervene under Fed.R.Civ.P. 24 [1]; PhRMA adequately represents its members' shareholders' interests.

## I. ANALYSIS

### A. Intervention of Right

Under Fed R. Civ. P. Rule 24(a)(2), a person who wants to intervene in a lawsuit must

satisfy four conjunctive prerequisites: (1) a timely application for intervention; (2) a demonstrated interest relating to the property or transaction that forms the basis of the ongoing action; (3) a satisfactory showing that the disposition of the action threatens to create a practical impairment or impediment to its ability to protect that interest; and (4) a satisfactory showing

that existing parties inadequately represent its interest.

*Pub. Serv. Co. of N.H. v. Patch,* 136 F.3d 197, 204 (1st Cir.1998). I address each of the four prerequisites in turn. I will assume, as the parties have assumed, that PhRMA is conducting the lawsuit to the satisfaction of its member companies. The question, therefore, is the same as if the three corporations in which Schindler owns stock were already individual plaintiffs in the lawsuit.

### (1) Timeliness

Schindler seeks intervention only as to future proceedings in this Court. I conclude that his motion is timely as to future proceedings. To be clear, that means that the motion is untimely as to the preliminary injunction issues, which were fully briefed and argued orally. I issued a preliminary injunction, the First Circuit has now vacated it, and there is no good excuse for Schindler not to have moved to intervene earlier if preliminary injunction was his concern. (Schindler did submit an *amicus curiae* brief to the court of appeals.)

### (2) Demonstrated Interest

Schindler's interest in this lawsuit is financial. He asserts that if PhRMA loses, the value of his stock in three member corporations will go down. That is enough to meet standing requirements under the Constitution, Article III. *See Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd.,* 493 U.S. 331, 336–37, 110 S.Ct. 661, 107 L.Ed.2d 696 (1990) (parent corporations that were sole shareholders of subsidiary corporations have Article III standing to challenge taxes imposed on the subsidiaries because the taxes threatened the parents with actual financial injury by reducing their return on their investments in the subsidiaries). Is Article III standing enough to support intervention under Rule 24(a)? The First Circuit has not answered

---

**1.** I overlook Schindler's failure to file a "pleading setting forth the claim or defense for which intervention is sought" with his motion to intervene, as required by Rule 24(c). Ordinarily that omission warrants dismissal. *Pub. Serv. Co. of N.H. v. Patch,* 136 F.3d 197, 205 n. 6 (1st Cir. 1998). Schindler, who is pursuing the motion *pro se* (although he is a lawyer), did include a copy of his First Circuit *amicus curiae* brief with

his motion, and he has also filed a separate lawsuit seeking invalidation of the challenged statutes. *Schindler v. King,* Civ. No. 01–11–B–C (D. Me. filed Jan. 18, 2001). The parties in this lawsuit are therefore aware of the theories on which he bases his motion for intervention, and nothing would be gained by compelling him to refile.

the question. Other courts have stated that a shareholder's ownership interest in a corporation is *not* sufficient to support the shareholder's Rule 24 intervention in the corporation's litigation. *See Gould v. Alleco, Inc.*, 883 F.2d 281, 285 (4th Cir.1989) ("In a sense, every company's stockholders ... have a stake in the outcome of any litigation involving the company, but this alone is insufficient to imbue them with the degree of 'interest' required for Rule 24(a) intervention.") (dicta); *Rigco, Inc. v. Rauscher Pierce Refsnes, Inc.*, 110 F.R.D. 180, 183–84 (N.D.Tex.1986) (a shareholder's interest in the corporation's cause of action is not a "direct, substantial, legally protectable interest" of the sort the Fifth Circuit required for Rule 24(a)(2) intervention).[2] Since I conclude below that a shareholder's motion for intervention ordinarily should founder because corporations adequately represent shareholder interests, I need not resolve the issue.

### (3) Practical Impairment

If Schindler is correct that the outcome of this lawsuit will affect his stock's value, there is no other way apparent to protect that interest except for this lawsuit.

### (4) Adequacy of Representation

Schindler acknowledges that PhRMA has "thoroughly raised" dormant commerce clause and Medicaid preemption arguments (the arguments that I found convincing and that the First Circuit rejected). But he asserts that PhRMA does not adequately represent the interests of a shareholder like him, because it has not advanced his patent law preemption argument. (In essence, Schindler's patent argument is that the Maine statutes seek to control the prices and conditions under which patented prescription drugs can be sold, that those controls conflict with federal patent law, and that the challenged statutes are therefore preempted.) He asserts that he, as a patent attorney, is "most qualified" to advance that argument.

■ Where an applicant for intervention has the same interest as a party, adequate representation is presumed. *Daggett*, 172 F.3d at 111. The Supreme Court has said that the burden of showing that representation may be inadequate "should be treated as minimal," *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972), but the First Circuit has stated that the requirement is nonetheless "more than a paper tiger." *Patch*, 136 F.3d at 207. An applicant for intervention must at least *identify* the inadequacy of representation. *Daggett*, 172 F.3d at 111, 114–15. What Schindler has identified is PhRMA's failure to argue that federal patent law preempts Maine's statutes. That is not enough.

■ First, where the applicant for intervention is a shareholder seeking to assert an interest in his corporation's lawsuit, his ability to rebut the presumption that the corporation will adequately represent its shareholders' interests is more circumscribed.[3] In that situation the presumption can ordinarily be rebutted only if the shareholder shows the sort of corporate disloyalty or carelessness that would support a derivative action.[4] The reasons for restricting shareholder interven-

---

2. While these cases imply that intervention of right may require an interest in excess of Article III standing, only the Seventh Circuit, in *United States v. 36.96 Acres of Land*, 754 F.2d 855, 859 (7th Cir.1985), has expressly adopted that position (not in the shareholder intervention context). *36.96 Acres of Land* was decided before the Supreme Court "tightened up the requirements for Article III standing in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)." *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 946 (7th Cir.2000).

3. Indeed, there is a separate rule for shareholder litigation on behalf of a corporation. *See* Fed. R.Civ.P. 23.1.

4. *See Alleghany Corp. v. Kirby*, 344 F.2d 571, 574 (2nd Cir.1965) (adequacy depends not on the correctness of the litigating strategy "but rather on whether shareholder interests were fully and fairly considered when the Board reached its decision"); *Stadin v. Union Elec. Co.*, 309 F.2d 912, 919 (8th Cir.1962) (where no collusion, adverse interest or failure of duty by corporation, "[m]ere difference of opinion among attorneys" on how to conduct litigation is not enough); *Molybdenum Corp. of Am. v. Int'l Mining Corp.*, 32 F.R.D. 415, 419–21 (S.D.N.Y.1963) (allowing shareholder to intervene in plaintiff corporation's action where the defendants owned the largest single block of plaintiff's common stock and where defendants had board members on plaintiff's board, "rais[ing] the spectre of subtle conflicts of interest between these parties who

tion in lawsuits brought by corporations are the same as those for the rule that a shareholder does not acquire a personal cause of action for injuries to the corporation. Regarding the latter, the First Circuit has stated that

> [t]he rule is a salutary one: if a shareholder, dissatisfied with the dealings entered into between his corporation and a third party, automatically possessed a personal right of action against the third party, then corporations would be paralyzed. They could rarely act except by unanimous consent. Business affairs would slow to a crawl, and the courts, confronted with a bewildering myriad of shareholder claims, would be as busy as a colony of centipedes with athlete's foot.

*Pignato v. Dein Host, Inc.*, 835 F.2d 402, 406 (1st cir.1987).[5]

■ Second, Schindler's only complaint of inadequacy is that PhRMA has failed to argue patent law in this lawsuit. But "the use of different arguments as a matter of litigation judgment is not inadequate representation *per se.*" *Daggett*, 172 F.3d at 112; *see also Stadin*, 309 F.2d at 919–20; *Haft*, 1994 WL 705194, at *2 ("Certainly ... there is no right for the stockholders to insist that their lawyers rather than the lawyers hired by the directors should control or contribute to the adjudication of the companies [sic] obligations."); *Atlanta Laundries, Inc. v. Nat'l Linen Serv. Corp.*, 81 F.Supp. 650, 651–52 (N.D.Ga.1948) (denying shareholders' motion to intervene where they were merely dissatisfied with corporation's lawyers). Disagreement over what legal arguments to make is the gist of Schindler's justification for intervention. Where the would-be intervenor's interest is the same as the party's, only an extreme failure to present obvious arguments constitutes inadequate representation. *Daggett*, 172 F.3d at 112.

In this case, Schindler's interests and goals are the same as PhRMA's: They both seek to protect financial interests by invalidating the challenged statutes. PhRMA's representation is therefore presumptively adequate, and Schindler has not rebutted that presumption with facts indicating either that his interests are adverse to PhRMA's or that it

may be friendly antagonists"); *Haft v. Dart Group Corp.*, 1994 WL 705194, *2 (Del.Ch.) (Allen, C.) (under Delaware Court of Chancery Rule 24(a)(2), which mirrors the federal rule, a shareholder did not have a right to intervene in a corporation's lawsuit because the corporation was adequately representing the shareholder's interests; a shareholder might be able to show inadequate representation if the situation were analogous to one that would support a derivative suit); *Attorney Gen. v. Brockton Agric. Soc'y*, 390 Mass. 431, 456 N.E.2d 1130, 1133 (1983) (under the Massachusetts rule, which mirrors the federal rule, where the "interest ... of a shareholder seeking to intervene on the side of the corporation is identical to that of the corporation, 'then a compelling showing should be required to demonstrate why this representation is not adequate' ") (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1923, at 524 (1972 & Supp. 1982)); Shapiro, *Some Thoughts on Intervention Before Courts, Agencies & Arbitrators*, 81 Harv. L.Rev. 721, 748 & n. 119 (1968) (shareholder intervention should be limited to "questions of competence, collusion, and bad faith"). *But cf. Nedick's Stores, Inc. v. Genis*, 34 F.R.D. 235, 237 (S.D.N.Y.1963) (minority shareholder could intervene to challenge transactions that plaintiff corporation had not challenged, where the claims were not "so obviously unfounded that the proposed intervenor should be denied all opportunity to try them out for the common good of the corporation and its stockholders"

and where the defendant was himself a 19% shareholder). *See generally* Note, *Shareholder Intervention in Corporate Litigation*, 63 Harv. L.Rev. 1426 (1950). (I recognize, as the First Circuit held in *Daggett*, 172 F.3d at 111, and the Massachusetts Supreme Judicial Court observed in *Brockton Agricultural Society*, 456 N.E.2d at 1133–34, that the three criteria listed by then-Judge Blackman in *Stadin*, 309 F.2d at 919 (collusion; adverse interest; nonfeasance are not an exclusive list of possible instances of inadequate representation).)

5. The reasons are somewhat less forceful in the intervention context—the power to intervene is not as potentially disruptive as the power to initiate a lawsuit—but allowing shareholder intervention as a matter of course would make corporations unable to manage their own litigation and would present the courts with unwieldy and ever-shifting disputes. On the other hand, the First Circuit has recognized that "tests of 'inadequacy' tend to vary depending on the strength of the interest. Courts might require very little 'inadequacy' if the would-be intervenor's home were at stake and a great deal if the interest were thin and widely shared." *Daggett*, 172 F.3d at 113–14. Schindler's interest is "thin and widely shared." His interest is no different that that of the thousands of other stockholders and is, precisely, the value of his stock.

suffers from any conflict of interest, collusion, bad faith, negligence or any other circumstances that could impair the quality of its representation. All he has offered is PhRMA's failure to advance his patent law preemption argument. That is not an extreme failure to present an obvious argument. Accordingly, I conclude that PhRMA's representation is adequate, and Schindler's motion to intervene must fail.

### B. Permissive Intervention

I also DENY Schindler's motion for permissive intervention under Fed.R.Civ.P. 24(b). PhRMA adequately represents his interests, and his presence would risk delaying the adjudication.

### II. CONCLUSION

I conclude that Edwin D. Schindler is not entitled to intervene as of right under Fed.R.Civ.P. 24(a)(2) and that he should not be allowed to intervene under Fed.R.Civ.P. 24(b). According, the motion to intervene is DENIED.

So ORDERED.